**SAMARITAN HEALTH CENTER, et al., Plaintiffs,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 85–0464.**

United States District Court, District of Columbia.

Sept. 26, 1986.

---

James L. Feldesman and Arthur R. Bregman, Klores, Feldesman & Tucker, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Joseph diGenova, U.S. Atty., Sheila Lieber and Felicia Chambers, U.S. Dept. of Justice, Washington, D.C., Ronald E. Robertson, Gen. Counsel, Ann Hunsaker, Asst. Gen. Counsel, Andrew Batavia, Atty., U.S. Dept. of Health & Human Services, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

The Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2315(h), 98 Stat. 494, 1080 (hereinafter "the Act"), provides that:

The Secretary of Health and Human Services *shall, prior to December 31, 1984*
—

(1) develop and publish a definition of "hospitals that serve a significantly disproportionate number of patients who have low income or are entitled to benefits under part A" of Title XVIII of the Social Security Act for purposes of section 1886(d)(5)(C)(i) of that Act, and

(2) identify those hospitals which meet such definition and make such identity available to the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate.

*Id.* (emphasis added) (quoting 42 U.S.C. § 1395ww(d)(5)(C)(i) ).

On July 12, 1985, this Court entered an order declaring, among other things, that the Act imposed upon defendant a clear, nondiscretionary duty to develop and publish a definition of "disproportionate share hospitals" and to identify eligible hospitals to the House Ways and Means Committee and to the Senate Finance Committee. That order directed the defendant to submit a plan and timetable for the development of the definition and for identifying the hospitals which meet the definition. Defendant submitted a plan, which proposed the filing of the definition by June 15, 1986—17 1/2 months after the December 31, 1984 deadline fixed by Congress in the Act. This plan was based on the assumption that compliance with the Act would require extensive research. The plaintiffs challenged the plan as inconsistent with the command of the Act and on August 29, 1985 the Court supplemented the July 12 order with a further order which provided that:

the Secretary shall develop and publish a definition of disproportionate share hospitals and identify those hospitals to the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate, as required by section 2315(h) of the Deficit Reduction Act of 1984. . . .

The memorandum accompanying that August 29 order recognized that the definition and list to be filed on or before December 31, 1985 might not be a perfect, but that

they could later be modified to reflect the further analysis which defendant represented to be in progress. *Samaritan Health Center v. Heckler*, 636 F.Supp. 503, 518 (D.D.C.1985).

Both parties appealed these orders, but sought no stay of them in this Court or in the Court of Appeals. On May 16, 1986, the Court of Appeals issued an order granting the joint motion to dismiss the cross-appeals. *Samaritan Health Center v. Bowen*, Nos. 85–5998 and 85–6086 (D.C.Cir. 1986).

Meanwhile, on December 31, 1985, the Secretary published a notice in the Federal Register which stated and explained definitions of (1) hospitals that serve a significantly disproportionate share of low income patients and (2) those that serve a significantly disproportionate share of Medicare Part A beneficiaries. 50 Fed.Reg. 53398 (1985). In addition, the notice recited that defendant was forwarding to the appropriate congressional committees a list identifying the hospitals that "based on currently available data meet these definitions." *Id.* at 53399.

The notice acknowledged that "Congress required the Secretary ... to develop and publish a definition ... [and to] provide a list." However, the notice conspicuously

failed to mention the fact that *Congress* required that the definition and list be prepared "prior to December 31, 1984." Also, the notice was laced with self-serving representations such as that "we believe further analysis is necessary to produce a reasonable definition and to determine whether an adjustment is warranted." [1] In addition, the notice represented that "[w]e are currently in the process of gathering the data for this analysis." *Id.* The notice followed this representation with a statement that attributed the December 31, 1985 filing date solely to the Court:

> On August 29, 1985, the United States District Court for the District of Columbia in *Samaritan Health Center, et al. v. Heckler* (Civil Action No. 85–0464) ordered the Secretary to develop and publish a definition of disproportionate share hospitals and to identify those hospitals to the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate on or before December 31, 1985.

50 Fed.Reg. 53399.

On April 7, 1986, without awaiting perfection of the Secretary's "analysis," Congress adopted a precise definition of significantly disproportionate share hospitals. Consolidated Omnibus Budget Reconcilia-

---

1. The brief notice included the following statements of reasons why defendant should not have to do what Congress and the Court had directed to be done:

    1. "[W]e believe that there is not currently sufficient evidence to demonstrate that an adjustment is warranted."
    2. "[W]e had not published a definition or developed a list of hospitals meeting the definition because we believe further analysis is necessary to produce a reasonable definition and to determine whether an adjustment is warranted. We are currently in the process of gathering the data for this analysis."
    3. "Because of the time constraints placed on us, we have relied on a statistical definition applied to two variables that are related to a hospital's share of low income patients and Medicare patients. The variables are (1) the ratio of hospital inpatient days ˌfor Medicare beneficiaries qualifying for SSI [Social Security Insurance] payments ... to covered Medicare hospital inpatient days ... and (2) the ratio of Medicare inpatient days ... to total hospital inpatient days...."

    4. "Although the AHA [American Hospital Association] is the most recently available information on total patient days, it is unaudited survey data and is missing values on the survey responses, which were self-reported by hospitals."
    5. "[T]here are difficulties in linking the two different data sources (AHA and HCFA) [American Hospital Association and Health Care Financing Administration] for each hospital."
    6. "Although we have used the best data currently available to us, problems still remain with the data in terms of completeness, accuracy, and validity."
    7. "We recognize that there are limitations to this method of determining disproportionate share hospitals, and we would have preferred to complete our analysis before issuing a definition and a list. This was not possible within the time and the data available to us. Thus, we would caution that a complete analysis might result in the establishment of a different definition and, consequently, a different list."

    50 Fed.Reg. 53399–53400 (Dec. 31, 1985).

tion Act of 1985 ("COBRA"), Pub.L. No. 99–272, § 9105, 1986 U.S.Code Cong. & Ad. News (100 Stat.) 158 (April 7, 1986).[2]

## II.

The matter is now before the Court on plaintiffs' motion for an order requiring the defendant to show cause why he should not be cited for contempt because, it is alleged:

Although defendant apparently complied with the Court's timetable for the definition and list, he failed to comply with the substantive requirements imposed by the Court's order, i.e., neither the definition nor list is in accordance with the prerequisites of Section 2315(h) of the Deficit Reduction Act.

Plaintiffs focus on several different aspects of their claim that the definition and the two lists prepared by the defendant are substantively inadequate to satisfy this Court's order:

(1) the lists include hospitals not in business when the lists were released;

(2) the lists include hospitals not receiving Medicare payments eligible for disproportionate share provision adjustments;

(3) the lists include hospitals operated by the Indian Health Service (fully federally funded and thus not needing disproportionate share treatment);

(4) the lists were compiled without adjustment for hospital size or occupancy rate, resulting in lists with smaller than average hospitals located in rural areas; and

(5) the lists fail to take into account all low income patients.

Plaintiffs support their motion with an affidavit and study filed by Dr. Mark N. Cooper, Ph.D., an expert on statistical and research methods. According to Dr. Cooper, the hospitals identified by the defendant:

contain less than 10,000 beds out of a total of over one million hospital beds in the nation. This represents less than one percent of all hospital beds as being located in hospitals with a disproportionate share of low income and Medicare patients.

The anomaly of the definition is further demonstrated by the fact, apparent from a glance at the lists, that:

The hospitals that qualify as a result of HCFA's methodology are small, generally rural hospitals. Not one major inner city hospital is identified, even though the low income and Medicare population resides disproportionately in inner cities.

In the memorandum submitted before oral argument on this matter, the HCFA chose not to challenge these observations. However, a Supplemental Brief and Declaration of J. Michael Fitzmaurice were submitted to the Court on July 21, 1986. These belated submissions argue that inadequacies in the lists were the result of problems with the available data bases and that "the agency did the best that it could under the circumstances." Defendant's Supplemental Brief at 5. Nonetheless, this Court finds that the HCFA did little or nothing to compensate for the inadequacies in available data bases. *See e.g.*, Declaration of Mark Cooper at 4. Nor did it attempt to revise its definition once it discovered that the resulting list included only 1% of the hospital beds in the United States and only a handful of hospitals located in urban areas. Finally, the failure of the HCFA to check the completed lists to ensure that the hospitals named were still in existence or were eligible for the program provides convincing evidence that the agency performed its functions in a careless fashion. Nor is this the first time that this defendant or his predecessor failed to comply with congressional directives to act in respect of health care by a date certain. *See, e.g., National Association of Rehabil-*

---

**2.** The COBRA provides separate definitions for large hospitals in urban areas (more than 100 beds) (15 percent of patients entitled to supplementary security income benefits); small hospitals in urban areas (less than 100 beds) (40 percent of patients entitled to supplementary security income benefits); and rural hospitals (45 percent of patients entitled to supplementary income benefits).

*itation Facilities, Inc. v. Schweiker*, 567 F.Supp. 47 (D.D.C.1983) and 550 F.Supp. 357 (D.D.C.1982).

Plaintiffs concede that, although defendant completely failed to meet the December 31, 1984 deadline set by Congress, defendant did comply with the specific command of this Court to file a definition and a list prior to December 31, 1985. Obviously, failure to file any list or definition by the December 31, 1985 deadline set by court order would have required granting of the contempt motion sought here. However, defendant did file something by this deadline. Moreover, the order which is at issue was not as clear-cut and specific as to the content of the definition and list as it might have been. The portion invoked by plaintiffs directed defendant to file a definition and a list "as required by section 2315(h) of the" Act. *See* Order filed August 29, 1985. Plaintiffs argue ultimately that the definition and list filed December 31, 1985 are "at odds with the intent of Congress and therefore with this Court's order." Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Order Defendant to Show Cause Why He Should Not Be Held In Contempt at 3. Plaintiffs charge that defendant's lists are "unresponsive and meaningless" as a result of a "misreading of legislation" and "from faulty statistical methodology." *Id.* at 13.

Plaintiffs' allegations might well support a motion for an order more specifically directing defendant to comply with the statute and the August 29 order. For it is apparent from the apologia in the notice that defendant, or his delegate, conspicuously failed to do what the Act required. According to the notice, however, the research and analysis necessary to provide the definition and list were in progress, so that full compliance with the Act could have been accomplished at a later date. *See* note 1, *supra.* Indeed, the August 29 Memorandum can be read to anticipate a supplement to the December 31, 1985 filing. But plaintiffs have apparently made no request that defendant supplement the December 31 notice and do not ask the Court to require one. They are presumably satisfied with the ultimate result effected by the 1986 legislation. There is therefore no justification for the Court to enter such an order *sua sponte* where Congress has proceeded to amend the statute to clarify defendant's duty, apparently without awaiting the results of the further analysis which was supposed to be under way as of December 31, 1985. In any event, plaintiffs have failed to justify an order initiating contempt proceedings at this time because the August 29 order did not require with crystal clarity any specific list, or a perfect list.

Hopefully, compliance with the new statute will be informed by plaintiffs' motion, the argument on it, and this memorandum. In order to facilitate such compliance, and to remind defendant's responsible associates of their continuing obligation to carry out congressional mandates and court orders, counsel for defendant are directed to obtain copies of the transcript of the argument held on July 9 from the Court Reporter and present one to the General Counsel of the Department of Health and Human Services. Accordingly, an accompanying order will deny plaintiffs' motion.