**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CABELL HUNTINGTON HOSPITAL,
INCORPORATED, a Statutory
Corporation; CHARLESTON AREA
MEDICAL CENTER, INCORPORATED;
OHIO VALLEY MEDICAL CENTER, INC.;
WEST VIRGINIA UNIVERSITY HOSPITAL,
Plaintiffs-Appellees,

v.

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,                                No. 95-3095
Defendant-Appellant,

and

BRUCE C. VLADECK, Administrator,
Health Care Financing
Administration; SUSAN HEREFORD,
Manager, Provider Audit and
Reimbursement, Blue Cross and
Blue Shield of Virginia,
Defendants.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-94-345-2)

Argued: September 26, 1996

Decided: November 27, 1996

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
SMITH, United Stated District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by published opinion. Chief Judge Wilkinson wrote the majority opinion, in which Judge Smith joined. Judge Luttig wrote a dissenting opinion.

_____

**COUNSEL**

**COUNSEL:** Scott Ramsey McIntosh, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Terrence J. O'Rourke, NASH & COMPANY, P.C., Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Rebecca Aline Betts, United States Attorney, Anthony J. Steinmeyer, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. David W. Thomas, NASH & COMPANY, P.C., Pittsburgh, Pennsylvania, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Four West Virginia hospitals challenge Medicare reimbursement calculations made by the Secretary of Health and Human Services. The hospitals argue that "disproportionate share" (DSH) payments, which are made to hospitals that serve a disproportionate number of low-income patients, were calculated by the Secretary based on an incorrect reading of the Medicare statute. The district court agreed with the hospitals and granted summary judgment in their favor. We affirm the judgment of the district court.

I.

When Congress enacted an overhaul of the Medicare payment system in 1983, it noted that low-income Medicare patients have generally poorer health and are costlier to treat than high-income Medicare patients. See Rye Psychiatric Hospital Center, Inc. v. Shalala, 52 F.3d 1163, 1164 (2d Cir. 1995). To compensate for this disparity, Congress authorized the Secretary to disburse extra Medicare funds -- DSH

2

payments -- to hospitals that treated a disproportionate share of low-income patients. 42 U.S.C. § 1395ww(d)(5)(F); see Social Security Amendments of 1983, Pub. L. No. 98-21, § 601(e) (codified at 42 U.S.C. § 1395ww(d)(5)(C)(i) (1983)). The Secretary chose not to formulate the DSH adjustment, 48 Fed. Reg. 39,783 (1983), but was then instructed by Congress to do so by December 31, 1984, Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 2315(h). When the Secretary failed to act, several hospitals sought a court order forcing compliance with the congressional mandate. See Samaritan Health Center v. Heckler, 636 F.Supp. 503 (D.D.C. 1985). The Secretary finally published criteria for the DSH payments in 1986, 50 Fed.Reg. 53,398-53,400, but Congress replaced them with its own in a 1986 amendment to the Medicare statute. Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99-272, § 9105 (1986); See Samaritan Health Center v. Bowen, 646 F.Supp. 343, 345-47 (D.D.C. 1986); 42 U.S.C. § 1395ww(d)(5)(F). The Secretary then promulgated new interpretive regulations to implement the statute. 42 C.F.R. § 412.106.

The four plaintiff hospitals in this case serve a disproportionate number of low-income Medicare recipients, and are therefore entitled to DSH payments. They sought judicial review, under 42 U.S.C. § 1395oo(f)(1), of the Secretary's calculations of their DSH reimbursements for inpatient hospital services. The district court entered summary judgment in favor of the hospitals, ruling that the Secretary's latest regulations were based on an interpretation of the statute that was inconsistent with its language, legislative history, and basic purpose. The district court ordered the Secretary to recalculate the DSH payments to the plaintiff hospitals. The Secretary appeals.

II.

Our task in this appeal is to interpret the statutory formula for Medicare DSH payments to health care providers. The goal of statutory interpretation is to implement congressional intent. Where the statute speaks clearly to the issue at hand, the inquiry ends. Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984). Where the statute is silent or ambiguous with respect to the question, a reasonable agency interpretation warrants deference. Id. at 843. We turn, therefore, to the statutory text and structure.

The DSH formula is composed of the sum of two fractions. Both fractions are designed to count the number of low-income patients served by a hospital, but each fraction counts a different group of those patients. The first, called the "Medicare fraction" or the "Medicare proxy" counts Medicare recipients who are entitled to supplemental security income (SSI), a federal low-income supplement.

The second fraction of the calculation is called the"Medicaid fraction" or "Medicaid proxy." It counts patients who are not entitled to Medicare benefits, but who qualify for Medicaid, a joint federal-state program serving indigent persons. This second fraction, the Medicaid proxy, is the one at issue in this case. This fraction reads:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid program], but who were not entitled to benefits under part A of [the Medicare program], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

Because Medicaid is a joint federal-state program, states vary, within the broad federal requirements, on eligibility rules and coverage. Some states, like West Virginia, limit the number of days that patients are covered for inpatient hospital care under Medicaid. 3 Medicare and Medicaid Guide (CCH) ¶ 15,656 at 6615. This court must decide whether the emphasized language in the above Medicaid proxy means DSH payments should take account of only those inpatient hospital days which are actually paid by West Virginia's Medicaid program (as the Secretary maintains), or whether the calculation should include all the days of patients who otherwise qualify for Medicaid but who may have exceeded the number of days covered under the state Medicaid plan (as the hospitals argue).

The question is of some practical importance. If the Secretary's interpretation prevails, hospitals serving large numbers of Medicaid recipients who outstay their state-imposed day limit will receive nei-

4

ther Medicaid reimbursement nor Medicare DSH payments for these additional hospital days. If the hospitals' interpretation prevails, these hospitals will receive significantly greater DSH payments to offset the cost of serving poorer patients. To determine which interpretation is correct, we must carefully examine the phrase "eligible for medical assistance under a State [Medicaid] plan." We first address the choice of the word "eligible" and then analyze how it fits with the rest of the language of the proxy.

A. Eligible

According to federal statute, certain patients must be covered under a state Medicaid plan for certain specified services. These mandatory categorically needy people are both low income and are either aged, blind, disabled, pregnant, or members of families with dependent children. 42 U.S.C. § 1396a(a)(10)(A)(i). They must be provided coverage for the cost of a specific package of services which includes certain kinds of inpatient and outpatient hospital care and physicians' services. Id.; 42 U.S.C. § 1396d(a)(1)-(5), (17), (21). Outside of this category of mandatory patients, states have considerable discretion to set income and status requirements for who will be covered, to declare which medical services will be covered, and to decide the duration of coverage. See 42 U.S.C. § 1396a(a)(10)(A)(ii) (describing persons for whom states have the option of providing medical coverage); 42 C.F.R. § 430.0 (delineating state authority to determine eligibility rules, services covered, and payment levels).

Section 1396d(a) of the Medicaid statute[1] defines "medical assistance" for patients whom states have the option of covering, listing twenty-five types of services which may be covered. This section refers to potentially eligible patients as those "whose income and resources are insufficient to meet all of such cost [of listed medical services]." The same provision distinguishes between "individuals with respect to whom there is being paid, or who are eligible" for Medicaid. Thus, patients can be "eligible" for Medicaid in a particular state by reason of income and status, while not "being paid" for a par-

_____

[1] Although the provision in dispute in this case is part of the Medicare statute, we must look to the Medicaid statute for guidance on the meaning of terms used in the Medicaid proxy.

5

ticular medical expense because of further state restrictions for that service.

West Virginia's Medicaid plan itself reinforces this distinction. The first section of the plan, entitled "Eligibility," lists the income, status and resource requirements of all the people that the plan covers. 3 Medicare and Medicaid Guide (CCH) ¶ 15,656 at 6613. The second section, entitled "Scope of Medical Care Provided," describes the services covered, including limitations on that coverage. Id. at 6615. This is the section which provides for a maximum of twenty-five paid hospital days under Medicaid in West Virginia.

Thus, there is a clear difference between eligibility for Medicaid payments under state plans and entitlement to them. This difference is reflected in the language of the two proxies. One-- the Medicare proxy -- is keyed to the concept of entitlement. It speaks of "patients who (for such days) were entitled to benefits under part A of [the Medicare program] and were entitled to supplementary security income benefits." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The other -- the Medicaid proxy -- is keyed to the concept of eligibility. It refers to "patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid program]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

Notwithstanding this difference between the two proxies, the Secretary would have us read the word "eligible" in the Medicaid proxy to mean exactly the same thing as the word "entitled." Indeed, she uses the two words interchangeably, substituting"entitled" for "eligible" in her regulation interpreting the Medicaid proxy, 42 C.F.R. § 412.106(b)(4), which was implemented in May 1986, shortly after the DSH legislation was passed, and has remained in effect since that time.

> The fiscal intermediary determines, for the hospital's cost reporting period, the number of patient days furnished to patients entitled to Medicaid but not to Medicare Part A, and divides that number by the total number of patient days in that same period.

6

42 C.F.R. § 412.106(b)(4) (emphasis added). This change from eligible to entitled results in fewer patients being counted in the calculation than if a literal reading of eligible were used.**2**

We cannot endorse the Secretary's reading. To do so, we would have to violate both a clear canon of statutory construction, and the plain meaning of the two terms. "Where Congress has chosen different language in proximate subsections of the same statute, courts are obligated to give that choice effect." United States v. Barial, 31 F.3d 216, 218 (4th Cir. 1994); see also Florida Public Telecommunications Ass'n v. F.C.C., 54 F.3d 857, 860 (D.C. Cir. 1995); United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972). In neighboring Medicare subsections, Congress uses the two different terms -- "eligible" to refer to a patient's status with regard to the state Medicaid plan and "entitled" to refer to his status with regard to the federal Medicare plan. Even within the Medicaid proxy itself, this distinction is reinforced by the use of the two different words when referring to the two different programs: "patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid program], but who were not entitled to benefits under part A of [the Medicare program]." 42 U.S.C.§ 1395ww(d)(5)(F)(vi)(II) (emphasis added). If Congress had wanted to use the word "entitled" throughout the Medicaid proxy as it had in the Medicare proxy, it could -- and would -- have done so. As the district court noted:

> [h]ad Congress intended to include in the Medicaid Proxy

_____

**2** In the preamble to the promulgation of her regulation, 51 Fed. Reg. 16777, the Secretary uses the word "eligible," but defines the fraction to include only paid days:

> Medicaid covered days will include only those days for which benefits are payable under Title XIX. Any day of the Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days. For example, if a patient is hospitalized for 15 days and is eligible for Medicaid benefits for 10 of those days, only the 10 covered days will be considered Medicaid patient days for purposes of determining a hospital's disproportionate patient percentage.

numerator only those patient days for which Medicaid benefits were actually paid by the state, it could have written the statute to read "which consists of patients who (for such days) were [paid] medical assistance under a state plan approved under [Medicaid]." Congress having chosen the word "eligible," rather than "paid," the Secretary is not at liberty to give the statutory language an entirely different and more restrictive meaning.

That the terms "eligible" and "entitled" are not interchangeable becomes eminently clear with everyday examples of the words' common meanings. In a football game, wide receivers are <u>eligible</u> to receive the ball from the quarterback, but none of them is <u>entitled</u> to receive it. Similarly, one who receives a letter informing him that he is eligible to win ten million dollars in the Publishers Clearing House Sweepstakes is sadly mistaken if he thinks he is entitled to the money. In the same vein, a patient who is "eligible" for Medicaid becomes "entitled" to payment only after using one of the covered medical services. Congress chose the word entitled for the Medicare proxy and the word eligible for the Medicaid proxy. Congress' use of separate words demonstrates it intended for each to have a separate meaning.

B. <u>Medical assistance under a State plan</u>

"Medical assistance" is defined in the Medicaid statute as "payment of part or all of the cost" of twenty-five listed types of medical care. 42 U.S.C. § 1396d(a). The potentially covered medical services include inpatient hospital services, § 1396d(a)(1), as well as home health care services, dental services, physical therapy, prescribed drugs, dentures and prosthetic devices, and services furnished by a nurse-midwife. § 1396d(a)(7), (10), (11), (12), (17).

The Secretary argues that "eligible for medical assistance" cannot include hospital days which are unpaid by the state Medicaid plan because the Medicaid statute defines "medical assistance" as "payment." § 1396d(a). The Secretary reasons that if "medical assistance" is "payment," then an otherwise Medicaid-eligible patient who has exhausted his coverage for inpatient hospital care is no longer "eligible for medical assistance" because he can no longer receive payment for inpatient services. The Secretary fails to account, however, for the

8

fact that inpatient hospital care is only one of twenty-five services listed in § 1396d(a) that are potentially available to a Medicaid-eligible individual. 42 U.S.C. § 1396d(a)(1). As long as he continues to meet the income, resource, and status requirements, a Medicaid patient who has exceeded his day limit in a West Virginia hospital, for example, is still eligible for payment of a number of the other twenty-four categories of medical services like outpatient hospital services, rural health clinic services, and X-rays. 3 Medicare and Medicaid Guide (CCH) ¶ 15,656 at 6615. Thus he remains "eligible for medical assistance" as the statute defines that term. See Deaconess Health Servs. Corp. v. Shalala, 912 F.Supp. 438, 447 (E.D. Mo. 1995), (noting that statutory definition of "medical assistance" is not limited to inpatient hospital care, and patient remains eligible for other medical services on that day), aff'd 83 F.3d 1041 (8th Cir. 1996) (per curiam).

Our good dissenting colleague reads this statute as though it were written "eligible for payment of inpatient hospital care." However, this is not the wording Congress chose. Congress instead wrote "eligible for medical assistance," and prescribed a specific definition for "medical assistance." We must respect that choice.

The phrase "under a State plan approved under[the Medicaid program]" does no more than reference the particular Medicaid plan covering the patient in question. Such Medicaid plans are formulated by each state ("a State plan") but must comply with the federal Medicaid statute in order to receive federal funds ("approved under subchapter XIX of this chapter"). See 42 U.S.C.§ 1396a(a) (listing requirements a State plan must fulfill to be approved).

It is apparent that "eligible for medical assistance under a State plan" refers to patients who meet the income, resource, and status qualifications specified by a particular state's Medicaid plan, whether or not they are actually receiving payment for a particular type of service or for a particular duration of coverage. A patient could be no longer entitled to Medicaid payment for inpatient hospital services because he had exhausted his coverage, but remain eligible for Medicaid payment for a host of other services, should he need them. Thus, by a plain reading of the statute, hospital days need not be paid by a

9

particular state Medicaid plan to be counted in the Medicaid proxy for the DSH calculation.

C. <u>For such days</u>

Both the Secretary and the hospitals look to the parenthetical "for such days" in the Medicaid proxy to bolster their interpretation. The statute reads: "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan . . ." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Secretary insists that "for such days" refers back to "patient days" earlier in the sentence, that it should be read "for such [patient] days" and that it should limit the Medicaid fraction to "patient days for which the Medicaid patient was eligible to have his or her [hospital] care paid for by the Medicaid program." 51 Fed. Reg. 31460 (Sep. 3, 1986). In other words, the Secretary argues that "for such days" ties "medical assistance" to inpatient hospital care, and precludes reading "medical assistance" as referring to any of the other twenty-four services listed in § 1396d.

We cannot adopt the Secretary's reading of "for such days" because it runs contrary to a specific definition set forth by Congress. Section 1396d defines "medical assistance" to include twenty-five medical services. If Congress had wanted "medical assistance" to take on a completely different meaning in the context of this Medicaid proxy provision of the DSH calculation, Congress could easily have so indicated. We cannot infer from an oblique "for such days" parenthetical that Congress was superseding its own statutory definition. Our dissenting brother relies on the parenthetical to drive the interpretation of the whole provision, thereby allowing the statutory tail to wag the dog. A parenthetical is, after all, a parenthetical, and it cannot be used to overcome the operative terms of the statute.

We believe that "for such days" modifies the phrase in which it is embedded: "patients who (for such days) were eligible." Read with an eye to grammatical proximity, "for such days" clarifies that a patient should be counted only for the days on which he meets the income and resource qualifications; if he acquires resources part way through his hospital stay such that he no longer is eligible for Medicaid, then his days beyond that point are not to be counted in the fraction. Simi-

10

larly, if a patient is ineligible for Medicaid when he enters the hospital, but depletes his resources such that he becomes eligible part way through his stay, his hospital days prior to eligibility should not be counted in the DSH calculation. See Legacy Emanuel Hosp. & Health Center v. Shalala, ___ F.3d ___, 1996 WL 577826, at *5 (9th Cir. 1996) (interpreting "for such days" to preclude those days on which patient, due to change in status, is ineligible for medical assistance).

The Secretary argues that the rest of the sentence, if interpreted in this manner, renders "for such days" essentially repetitive and meaningless. We disagree. To the contrary, "for such days" is necessary to specify that patients who met the Medicaid eligibility requirements during only part of their stay are counted only on their eligible days. Without "for such days," the statute might be interpreted to include all the days a patient was in the hospital, as long as he was eligible for Medicaid at some point during the stay.

III.

Both parties urge this court to look to the legislative history of the statute for clarification of its meaning. The statute is the product of the usual complex courtship between a House bill (H.R. 3128) and a Senate bill (S. 1606). Each bill is accompanied by its own retinue of reports, comments, amendments, and debates. If the statute is complex, the legislative history is more so. Drawing from it would necessarily be an exercise in selectivity, which we decline to undertake.

We are mindful of the expertise of agencies charged with implementing statutory directives. Chevron, 467 U.S. at 843. We cannot, however, allow an agency, hostile from the start to the very idea of making the payments at issue, to rewrite the will of Congress. As the Supreme Court has explained:

> [t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

11

Chevron, 467 U.S. at 843 n.9 (citations omitted). Here, Congress had an intention: to make DSH payment calculations based on the number of patients eligible for state Medicaid. The agency had a contrary intention: to make such calculations based on the number of patients entitled to Medicaid payment for inpatient hospital care. In the case of conflict, it is clear whose interpretation shall prevail.

Three sister circuits agree with us. The Ninth, Eighth and Sixth Circuits all hold that the Secretary's interpretation of the Medicaid proxy does not comply with congressional intent as expressed in the statute and is therefore impermissible. Legacy Emanuel Hosp. & Health Center v. Shalala, ___ F.3d #6D6D 6D#, 1996 WL 577826 (9th Cir. 1996); Deaconess Health Servs. Corp. v. Shalala , 83 F.3d 1041 (8th Cir. 1996) (per curiam) (affirming 912 F.Supp. 438 (E.D. Mo. 1995)); Jewish Hosp., Inc. v. Secretary of Health and Human Servs., 19 F.3d 270 (6th Cir. 1994). In sum, "[w]e believe the language of the Medicare reimbursement provision is clear: the Medicaid proxy includes all patient days for which a person was eligible for Medicaid benefits, whether or not Medicaid actually paid for those days of service." Legacy Emanuel Hosp., 1996 WL 577826 at *3.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

LUTTIG, Circuit Judge, dissenting:

We have previously observed that the Medicare and Medicaid provisions "are among the most completely impenetrable texts within the human experience." Rehabilitation Ass'n of Virginia v. Kozlowski, 42 F.3d 1444, 1450 (4th Cir. 1994). While, as a general matter, this is no doubt true, the particular provision with which we are concerned here, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), actually is relatively clear. It provides in relevant part that the Medicaid proxy should include "the number of the hospital's patient days . . . which consist of patients who (for such days) were eligible for medical assistance

under a State [Medicaid] plan." "Medical assistance," in turn, is a defined term, meaning "payment of part or all of the cost" of certain specified medical services. 42 U.S.C. § 1396d(a) (emphasis added). Section 1395ww(d)(5)(F)(vi)(II) thus effectively reads that the Medicaid proxy should include "the number of the hospital's patient days . . . which consist of patients who (for such days) were eligible for [payment of part or all of the cost of medical services] under a State [Medicaid] plan."

According the statute's parenthetical phrase "for such days" its natural meaning as a cross-reference to the "hospital patient days," or "inpatient days," referenced earlier in the same sentence -- the only "days" to which the parenthetical could possibly refer -- the plain meaning of the statute is that a hospital may include in its "hospital patient days" only those days for which a patient was eligible to receive payment for his inpatient hospital care. Cf. 51 Fed. Reg. 31460 (Sept. 3, 1986) (Medicaid fraction includes"patient days for which the Medicaid patient was eligible to have his or her [hospital] care paid for by the Medicaid program"). Thus the statute's title: "Payments to hospitals for inpatient hospital services," see 42 U.S.C. § 1395ww (emphasis added). Since patients who do not meet state day limitations are ineligible for payment of any of the cost of their inpatient hospital care, their in-hospital days are not, according to the statute's plain language, to be included in the Medicaid proxy.

In the course of rejecting the Secretary's plain meaning interpretation of section 1395ww(d)(5)(F)(vi)(II), the majority declines to read the parenthetical clause "for such days" as referencing a patient's in-hospital days, interpreting the clause instead as modifying the subsequent term "eligibility." The clause, says the majority, merely serves as a "clarification" of what it perceives to be the statute's limitation that, for each patient day claimed, the patient must have met state income and resource qualifications. See ante at 10. The majority thus interprets the statute so as to allow a hospital to include in its "hospital patient days" all days on which a patient was entitled to receive payment for any service listed in section 1396d (for example, the fitting of "dentures," see 42 U.S.C. § 1396d(a)(12)). See ante at 9 (a patient who is eligible to receive payment for any one of the twenty-four services listed in section 1396d "remains `eligible for

13

medical assistance' as the statute defines that term." (citations omit-
ted)).

So understood, however, the parenthetical is, as the Secretary
notes, superfluous, for the provision would have precisely the same
meaning absent the parenthetical: "Hospital patient days" would still
comprise only those days for which patients were "eligible" for medi-
cal assistance under the various state laws governing Medicaid quali-
fication. Indeed, if the parenthetical is understood as the majority
does, it tends to confuse, not to clarify, the meaning of the statute.

Nor is the parenthetical necessary, as the majority suggests, in
order to ensure that all of the days that a patient is in the hospital are
not included in the proxy simply because the patient was eligible for
Medicaid on some of the days during his hospital stay. See id.
Because the statutory unit of measure is "patient days," it would have
been clear even without the parenthetical that a hospital could not
include in the proxy those days as to which a patient was ineligible
for any form of medical assistance.

The majority also concludes that according the parenthetical clause
its plain meaning would render section 1395ww(d)(5)(F)(vi)(II) con-
tradictory to section 1396d's definition of "medical assistance." See
ante at 10. This is simply not so. The Secretary reads the "for such
days" parenthetical as a plain and simple cross-reference to the inpa-
tient hospital days referenced earlier in the sentence, a cross-reference
that was almost certainly thought necessary because, and only
because, the statute somewhat awkwardly defines a hospital's patient
"days" in terms of "patients" eligible for certain medical assistance.
Understood in the way urged by the Secretary, the parenthetical does
not "preclude[ ] reading `medical assistance' as referring to any of the
other twenty-four services listed in § 1396d," or otherwise serve to
limit the scope of services statutorily recognized in section 1396d.
Compare ante at 10. That Congress, in section 1395ww(d)(5)(F)
(vi)(II), allowed inclusion in a hospital's "patient days" only of those
inpatient days for which a patient was eligible to receive payment has
no effect at all on section 1396d's definition of "medical assistance."

The majority believes that the plain-meaning interpretation of the
statute requires that "an otherwise Medicaid-eligible patient who has

14

exhausted his coverage for inpatient hospital care is no longer `eligible for medical assistance' because he can no longer receive payment for inpatient services," that the term "medical assistance" does not always include all of the twenty-five services listed in section 1396d. See ante at 8-9. However, this is not the consequence of the Secretary's interpretation. The Secretary fully recognizes, and her interpretation allows, that such a patient may still be eligible for payment of costs incurred in connection with services other than inpatient hospital care. Her point, reinforced by her interpretation of the statute, is not that such a patient is no longer eligible for medical assistance of any type, but, rather, that section 1395ww(d)(5)(F)(vi)(II) is wholly unconcerned with patients' eligibility for the payment of medical services that are unrelated to inpatient hospital care, as the title of the statute, by negative inference, confirms.

The majority, of course, ultimately rejects the Secretary's plain meaning interpretation of the statute as a whole solely on the ground that Congress used the word "entitled" in the Medicare proxy, see 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I), whereas it used the word "eligible" in the Medicaid proxy at issue here. Because of the different word choices in the two different provisions, the majority reasons, as did the district court, that Congress must not have intended for the word "eligible" to be interpreted to mean "entitled." Ordinarily, I, too, would ascribe significance to this different choice of terminology. And were I to do so, I would likely accept the majority's distinction between these two terms, although it is the case that dictionaries tend to define the terms by reference to each other. Indeed, somewhat surprisingly, Webster's Third New Int'l. Dictionary 736 (1986), lists as the original definition of "eligible," "entitled to something." In this particular context, however, imputing purpose to Congress' different word choice is simply unwarranted. Congress has, throughout the various Medicare and Medicaid statutory provisions, consistently used the words "eligible" to refer to potential Medicaid beneficiaries and "entitled" to refer to potential Medicare beneficiaries for no reason whatever that anyone (including the Secretary, who is intimately familiar with the statutes at issue) has been able to divine. See generally Jewish Hospital v. Secretary of Health and Human Services, 19 F.3d 270, 278-79 (6th Cir. 1994) (Batchelder, J., dissenting). Indeed, this very distinction in terminology is carried forward into section 1395ww(d)(5)(F)(vi)(II) itself, wherein Congress allows inclusion in

15

the Medicaid proxy of only the patient days for those patients who were <u>eligible for Medicaid</u> benefits, but who were not <u>entitled to Medicare</u> benefits. In other portions of the statute, the terms "eligible" and "entitled" are even used interchangeably. <u>See</u>, <u>e.g.</u>, 42 U.S.C. § 426a; <u>id</u>. at § 1395i-2. In these circumstances, I just cannot see ascribing to Congress an affirmative intention to have the terms interpreted differently.

In sum, I am convinced that Congress did, as the Secretary argues, plainly allow hospitals, in this provision governing "Payments to hospitals for inpatient hospital services," to include in their "hospital patient days" only those days for which patients were eligible to receive payment for their inpatient hospital care. But I have no doubt whatsoever that, at the very most, the statute is ambiguous for the combined reasons set forth in the two opinions for our court. In either event, reversal of the district court's judgment is required. Accordingly, I dissent.

16