IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50731

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUVENITO MONJARAS-CASTANEDA,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas

_____

September 16, 1999

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:


The issue presented in this appeal is one of statutory construction. Its resolution will determine whether Juvenito Monjaras-Castaneda's crime of conviction, illegally transporting aliens, is an aggravated felony, thereby requiring an enhanced sentence.

On September 24, 1992, six people illegally crossed the Rio Grande into the United States near Eagle Pass, Texas. They continued to Smiley, Texas, where they joined Juventino Monjaras-Castaneda ("Monjaras").[1] He was supposed to take them to Waco, Texas, but a traffic accident on September 26 ended the trip. The police arrested Monjaras and the rest of the group.

Monjaras later pled guilty to transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(B)(now § 1324(a)(1)(A)(ii)) and was sentenced to six months' imprisonment. After serving his sentence, he was deported. He reentered the country two years later and was again deported in 1996. In 1998, the border patrol arrested him, along with his brother, near Carrizo Springs, Texas.

This time, Monjaras pled guilty to illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) & (b)(2). The district court sentenced him to 46 months' imprisonment. In calculating this sentence, the district court increased the base offense level by 16 under U.S.S.G. § 2L1.2(b)(1)(A) because of Monjaras's 1992 aggravated felony conviction for illegally transporting aliens. In rejecting Monjaras's objection to the enhancement, the district court explained that Monjaras's earlier

---

[1]Monjaras had already met with the group in Mexico to arrange the trip.

2

six-month prison sentence had not been a sufficient deterrent to stop him from returning to the United States. Monjaras now challenges the sentence enhancement by arguing that illegally transporting aliens does not fall within the definition of "aggravated felony" for purposes of U.S.S.G. § 2L1.2(b)(1)(A).

## II

### A

There is only one issue before us on appeal: whether the term "aggravated felony" in § 2L1.2(b)(1)(A)[2] of the federal sentencing guidelines includes illegal transport of aliens. Application Note One to this section explains that "[a]ggravated felony is defined

---

[2]This section of the sentencing guidelines is titled "Unlawfully Entering or Remaining in the United States," and reads:

  (a) Base Offense Level: 8

  (b) Specific Offense Characteristic

    (1)    If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):

        (A)  <u>If the conviction was for an aggravated felony, increase by 16 levels</u>.

        (B)  If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by 4 levels.

(Emphasis added.)

3

at 8 U.S.C. § 1101(a)(43)." U.S.S.G. § 2L1.2, comment, n.1. Under 8 U.S.C. § 1101(a)(43)(N), "The term 'aggravated felony' means-- . . . an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling)." Monjaras concedes that 8 U.S.C. 1324(a)(1)(A) describes the offense of illegal transport of aliens, along with several other offenses related to illegal aliens.[3]

---

[3](1)(A) Any person who--

  (i)  knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien;

  (ii)  knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

  (iii)  knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

  (iv)  encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or

  (v)  (I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the

It seems straightforward that Monjaras's illegal-transport-of-aliens conviction qualifies him for the increased punishment, but Monjaras makes three statutory construction arguments to the contrary. All three concern the parenthetical in 8 U.S.C. § 1324(a)(1)(A), "(relating to alien smuggling)."

First, Monjaras contends that under the plain meaning of § 1324(a)(1)(A), a conviction for transporting aliens does not "relate to alien smuggling." He points out that "smuggling" involves crossing a national border. Monjaras then concludes that the only way to give effect to the phrase "relating to alien smuggling" is to limit the scope of § 1101(a)(43)(N) to include only the crimes in § 1324(a) that involve alien smuggling.

Second, Monjaras supports his proposed construction by arguing that it is consistent with other provisions of the Immigration and Nationality Act and the sentencing guidelines interpreting them. He begins by arguing that "smuggling" in § 1101(a)(43)(N) should have the same meaning as in 8 U.S.C. § 1251(a)(1)(E) (recodified at 8 U.S.C. § 1227). That section defines "smuggling" as having "encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of the

_____

commission of any of the preceding acts,
shall be punished as provided in subparagraph (B).

5

law."  Monjaras then cites case law[4] interpreting § 1251(a)(1)(E) to require entry into the United States in order to qualify as "smuggling."  He next points to the title of U.S.S.G. § 2L1.1, "Smuggling, Transporting, or Harboring an Unlawful Alien."  Since it separates "smuggling" and "transporting" as two different offenses, Monjaras believes we should treat each differently.

Third, Monjaras contends that we must construe any ambiguity in § 1101(a)(43)(N) in his favor under the rule of lenity.

The government responds with the following five arguments of its own.  First, the intent of Congress has been to expand the definition of "aggravated felony."[5]  Second, the plain meaning of § 1101, § 1324, and U.S.S.G. § 2L1.2 includes transportation of aliens because that offense is expressly enumerated in § 1101(a)(43)(N).  Third, the government argues that the "relating to" parenthetical merely describes the general nature of the felonies in § 1324(a)(1)(A) rather than which of those felonies apply to § 1101(a)(43)(N).  Fourth, even if the "relating to" parenthetical is restrictive, not descriptive, a broad reading of "relating to" still includes transporting aliens. Fifth, the rule

---

[4]The case Monjaras cites is <u>Carbajal-Gonzalez v. INS</u>, 78 F.3d 194, 201 (5th Cir. 1996).

[5]The government cites <u>Richardson v. Reno</u>, 162 F.3d 1338, 1350 n.42 (11th Cir. 1998) in support of its interpretation of "congressional intent."

of lenity does not apply because the two statutes and the sentencing guidelines are unambiguous.

B

We review the district court's application of the sentencing guidelines de novo, <u>United States v. Hinojosa-Lopez</u>, 130 F.3d 691, 693 (5th Cir. 1997), and conclude that "aggravated felony" in U.S.S.G. § 2L1.2(b)(1)(A) includes transportation of aliens. The central question is whether the parenthetical in § 1101(a)(43)(N) is descriptive or restrictive.

The process of statutory construction begins with an examination of the statute's actual language. <u>United States v. Alvarez-Sanchez</u>, 511 U.S. 350, 356, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994). The language at issue is from § 1101(a)(43)(N): "The term 'aggravated felony' means-- . . . an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling)."

An examination of this language reveals that the parenthetical, "(relating to alien smuggling)" refers to "paragraph (1)(A) or (2) of section 1324(a) of this title," not "offense." The conventional rules of grammar demonstrate this. <u>See</u> Norman J. Singer, 2A Sutherland Statutory Construction § 45.13, at 78 (5th ed. 1992)("[L]egislators can be presumed to rely on conventional language usage."). If the parenthetical referred to "offense," it

7

would have been placed directly after that word.  The parenthetical instead has been placed in the prepositional phrase introduced by "in," of which "paragraph" is the subject.  See John E. Warriner and Francis Griffith, English Grammar and Composition 37-40 (Heritage ed., Harcourt Brace Jovanovich 1977)(discussing prepositional phrases).

This examination indicates that the parenthetical is more reasonably interpreted as descriptive rather than limiting.  If the parenthetical referred to "offenses," then the statute would effectively read: "offense[s] (relating to alien smuggling) described in paragraph (1)(A) or (2) of section 1324(a) of this title," which obviously would be a very different proposition that would clearly favor Monjaras's interpretation.  But, alas, that is not the way the statute is written.

Reading the parenthetical to refer to "paragraph" does not end our inquiry, however, because there are still two possible interpretations.  Should we read it as "the offenses described in paragraph (1)(A) or (2) that are smuggling offenses," or as "the offenses described in paragraph (1)(A) or (2), which generally deals with smuggling offenses"?

We read the parenthetical descriptively based on the general context and structure of § 1101(43).  Courts have often construed parentheticals in statutes in this manner based on these two

8

considerations. See, e.g., Quarles v. St. Clair, 711 F.2d 691, 700 n.28 (5th Cir. 1983)(concluding that parenthetical in 42 U.S.C. § 602(a)(28) was for clarification purposes only); United States v. Herring, 602 F.2d 1220, 1223 (5th Cir. 1979)(holding that parenthetical in 18 U.S.C. § 1961 was "merely to aid identification of [18 U.S.C.] § 2314 rather than to limit"); United States v. Kassouf, 144 F.3d 952, 959-60 (6th Cir. 1998)(finding parenthetical in 26 U.S.C. § 6531(6) descriptive); United States v. Garner, 837 F.2d 1404, 1419 (7th Cir. 1987)(finding parenthetical in 18 U.S.C. 1961(1)(B) "mere 'visual aids,' designed to guide the reader through what would otherwise be a litany of numbers").

The context in which the parenthetical appears in this case suggests its descriptive nature. Section 1101(a)(43) contains a long list of aggravated felonies that it references by section number. Without any descriptions of what this "litany of numbers" referred to, determining whether an offense qualified as an aggravated felony would be a long and arduous process. One would need to look up each section number in the Code to get to the right one. The parentheticals here provide an "aid to identification" only.

The government makes a strong structural argument by pointing to parentheticals in § 1101(a)(43) that are indeed expressly limiting. One example is § 1101(a)(43)(F), which reads "a crime

of violence (as defined in § 16 of Title 18, *but not including* a purely political offense) for which a term of imprisonment is at least one year."  (Emphasis added.)  Another is § 1101(a)(43)(J): "an offense described . . . in section 1084 (*if it is a second or subsequent offense*)."  (Emphasis added.)

Congress thus clearly demonstrated its ability to exclude some specific offenses from those listed in the more general sections. We will not therefore infer exclusion in § 1101(a)(43)(N), especially since transportation of aliens is specifically enumerated in § 1324(a).  "A parenthetical is, after all, a parenthetical, and it cannot be used to overcome the operative terms of the statute."  <u>Cabell Huntington Hospital, Inc. v. Shalala</u>, 101 F.3d 984, 990 (4th Cir. 1996).

The phrase "relating to alien smuggling" does describe the offenses in § 1324(a).  All involve the transportation, movement, and hiding of aliens into and within the United States.

We can quickly dispose of Monjaras's arguments.  We have already addressed the statute's plain meaning and need not restate our reasoning.  Since that meaning is plain, use of the rule of lenity is not warranted.  The rule applies only when the statute is ambiguous.  <u>United States v. Shabani</u>, 513 U.S. 10, 17 (1994) (citations omitted); <u>United States v. Luna</u>, 165 F.3d 316, 344 (5th Cir. 1999).  Finally, the provision of the Immigration and

10

Nationality Act that Monjaras relies on simply defines smuggling, which is irrelevant to our inquiry. And Monjaras's restatement of the title of U.S.S.G. § 2L1.1, "Smuggling, Transporting, or Harboring an Unlawful Alien," indicates that smuggling and transporting should be treated together, not separately, for purposes of this guideline.

Even if Monjaras were correct that the parenthetical is limiting, he ignores the "relating to" portion of "(relating to alien smuggling)." Transporting aliens is quite often "related to" smuggling. This was especially true in Monjaras's case, where the transportation was merely one step in smuggling the six illegal aliens from Mexico and Waco.

As a result, we conclude that the parenthetical "(relating to alien smuggling)" acts only to describe, not to limit the "offenses

described in paragraph (1)(A) or (2) of section 1324(a)."[6] Transporting aliens, therefore, is an aggravated felony for purposes of U.S.S.G. § 2L1.2(b)(1)(A).

For the reasons stated herein, we AFFIRM.

---

[6]Our construction accords with the legislative history as well. See H.R. Rep. No. 104-22, at 5 (1995) ("H.R. 688 makes several amendments to the Immigration and Nationality Act . . . the bill would add certain crimes to the definition of 'aggravated felony'. . . ."); id. at 7 ("One of the steps the Committee recommends . . . is to add several crimes to the definition of 'aggravated felony.'"); id. ("In adding crimes to the list, effort was made to ensure that the overall reach of the definition would be consistent with the sentencing guidelines."); H.R. Rep. No. 104-22, at 5 (1995)("[these amendments] address the problems of aliens who commit serious crimes while they are in the United States and to give Federal law enforcement officials additional means to combat organized immigration crime.")

A F F I R M E D.

POLITZ, Circuit Judge, dissenting:

Persuaded that Congress and the Sentencing Commission did not intend for mere transportation of aliens without a corresponding act of smuggling to be considered an aggravated felony, I respectfully must dissent.

As the majority has noted, Juventino Monjaras-Castaneda pled guilty to being found in the United States after previously having been deported, resulting in a base offense level of eight under the Guidelines. With an acceptance of responsibility adjustment, the sentencing range would have been 10-16 months.[7] The district court, however, applied a 16-level enhancement under USSG § 2L1.2(b)(1)(A), which, with an acceptance of responsibility adjustment, resulted in a Guideline range of 46-57 months. Monjaras was sentenced to 46 months imprisonment.

USSG § 2L1.2(b)(1)(A) requires the 16-level increase in the base offense level if the defendant previously was deported or removed after a criminal conviction provided the conviction was for an "aggravated felony." Application note one to § 2L1.2 observes that an aggravated felony "is defined at 8 U.S.C. § 1101(a)(43) without regard to the date of conviction of the aggravated felony."

---

[7] The 10-16 month range would have resulted from a four-level enhancement for a previous non-aggravating felony and a two-level acceptance of responsibility adjustment.

14

Under 8 U.S.C. § 1101(a)(43)(N), an "aggravated felony" includes "an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling)."   M o n j a r a s previously had been deported because he was convicted of transportation of aliens under 8 U.S.C. § 1324(a)(1)(A).  In that offense, Monjaras met six undocumented aliens in Smiley, Texas, near San Antonio, and began driving them to Waco.  Because the transportation offense of which he was convicted did not involve bringing aliens across the border, Monjaras contends that the crime is not one "relating to alien smuggling" and cannot be used for the § 2L1.2(b)(1)(A) sentencing enhancement.

Although the majority correctly frames the issue, I must disagree with its resolution.  By concluding that the parenthetical phrase "relating to alien smuggling" is merely a description of the crimes in § 1324(a), the majority necessarily ignores both the plain language of the statute and the structure of other immigration provisions.

The fundamental rule of statutory construction requires that courts give effect to every word in a statute.[8]  "Smuggling" is defined as the "fraudulent taking into a country, or out of it,

---

[8] **Ruiz v. Estelle**, 161 F.3d 814 (5th Cir. 1998) (citing **Crist v. Crist**, 632 F.2d 1226, 1233 n.11 (5th Cir. 1980) (stating that courts must "give effect, whenever possible to all parts of a statute and avoid an interpretation which makes a part redundant or superfluous")).

merchandise which is lawfully prohibited."[9]  Consequently, because "alien" is defined as a non-citizen or non-national of the United States,[10] "alien smuggling" would be the illegal taking of a non-citizen into the country, an action which, to me, entails a crossing of the border.  Further, there are several crimes listed in § 1324(a)(1) & (2) that do not involve the bringing of aliens into the United States, such as encouraging aliens to enter the country,[11] and concealing, harboring, or shielding them from detection.[12]  I am of the belief that if Congress had intended to include <u>any</u> crime listed in § 1324(a)(1) or (2) as an aggravated felony, it simply would have said so.  That it chose not to do so but, rather, used the "relating to alien smuggling" language is not properly weighed by the majority in my view.[13]

---

[9]  Black's Law Dictionary 1389 (6th ed. 1990).  Black's Law Dictionary also notes that "smuggling" and "smuggle" have "well-understood meaning[s] at common law."  Id.

[10]  8 U.S.C. § 1101(a)(3).

[11]  8 U.S.C. § 1324(a)(1)(A)(iv).

[12]  8 U.S.C. § 1324(a)(1)(A)(iii).

[13]  The majority places great emphasis on grammatical rules and sentence structure in concluding that the parenthetical is descriptive rather than restrictive.  The majority recognizes, however, that reliance on grammar and construction does not eliminate a restrictive interpretation of the parenthetical.  *See* ante at 8-9 (noting the two possible interpretations remaining after grammatical analysis).

16

My resolution is buttressed by the construction of other immigration provisions. For example, § 1324 sets more serious penalties for offenses which involve the bringing of aliens into the United States as compared to the harboring, transporting, and concealing offenses, in which the alien already is in the country.[14] Additionally, elsewhere in the Immigration and Nationality Act "smuggling" is defined as having "encouraged, induced, assisted, abetted, or aided any other alien *to enter or to try to enter the United States* in violation of law."[15] Likewise, the disjunctive division of Guideline provision titles such as "Smuggling, Transporting, *or* Harboring an Unlawful Alien"[16] indicates a distinction between smuggling and transporting offenses.[17]

---

[14] *Compare* the ten-year penalty for offenses in which a person "brings to" the United States an alien, 8 U.S.C. § 1324(a)(1)(B)(i), *with* the five-year penalty for transporting, concealing, and harboring offenses, 8 U.S.C. § 1324(a)(1)(B)(ii).

[15] 8 U.S.C. § 1227(a)(1)(E)(i) (emphasis added). *See* **Sullivan v. Stroop**, 496 U.S. 478 (1990) (holding that identical words used in different parts of the same act are intended to have the same meaning); **Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.**, 174 F.3d 653 (5th Cir. 1999).

[16] *See* USSG § 2L1.1 (emphasis added).

[17] **Holly Farms Corp. v. N.L.R.B.**, 517 U.S. 392 (1996) (holding that terms connected by a disjunctive are to be given separate meanings) (quoting **Reiter v. Sonotone Corp.**, 442 U.S. 330 (1979)); **Crist**, 632 F.2d at 1233 n.11.

Further, the majority ignores the rule of lenity, which requires that ambiguities in federal statutes or sentencing enhancements are to be considered in the defendant's favor and are not to be construed in a way that maximizes the penalty.[18]  Because Congress and the Sentencing Commission did not define "alien smuggling" and the crimes that relate to the smuggling, it would appear that there exists an ambiguity in the statute that should have resulted in an interpretation favorable to Monjaras.

Finally, the very seriousness of the 16-level enhancement cannot go unnoticed.  Using the bottom of the Guideline range, the aggravated felony enhancement caused a <u>four-fold</u> increase in Monjaras' sentence.  In my opinion the majority's holding relies on far too slender a reed to warrant this dramatic increase.  Convinced that Congress meant to require a border-crossing element when it authorized an aggravated felony enchantment for crimes "relating to alien smuggling," I must dissent.

---

[18]  **United States v. Brito**, 136 F.3d 397 (5th Cir.), *cert. denied*, 118 S. Ct. 1817 (1998).