**Louis EVANGELISTA, Petitioner,**

v.

**John ASHCROFT, et al., Respondents.**

**No. CV 01–6126.**

United States District Court,
E.D. New York.

Nov. 22, 2002.

Michael P. DiRaimondo, Melville, NY, for Petitioner.

Roslynn R. Mauskopf, United States Attorney, By Scott Dunn, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, for Respondents.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner Louis Evangelista ("Petitioner" or "Evangelista") seeks a writ of habeas corpus requiring the Immigration and Naturalization Service ("INS") to hold a hardship-based hearing on relief from deportation. A decision on the merits of this claim was initially held in abeyance pending a decision by the Second Circuit in the appeal of the case of *Jankowski v. INS*, 138 F.Supp.2d 269 (D.Conn.2001).

On May 29, 2002, the Second Circuit reversed the decision of the district court in *Jankowski*. *See Jankowski–Burczyk v. INS*, 291 F.3d 172 (2d Cir.2002). The effect of the Second Circuit's ruling was to

foreclose one of Petitioner's arguments. Specifically, Petitioner was no longer in a position to argue that the statute denying him the right to seek a discretionary waiver of deportation was unconstitutional.[1]

After the decision by the Second Circuit in *Jankowski–Burczyk*, this court ordered additional briefing in June 2002. Thereafter, the government was granted until October 2002 to respond to a letter submitted by Petitioner's counsel. That letter has now been submitted and the matter is now fully briefed, submitted and ripe for adjudication.

## BACKGROUND

### I. *Evangelista's Background and Criminal Conviction*

Evangelista is a native of Italy who has been a lawful permanent resident of the United States since 1961. Although Evangelista never became a citizen of this country, his wife is a naturalized United States citizen. His five adult children were all born in this country and remain residents of the United States.

In October of 1996, Evangelista was convicted, after a jury trial, of tax evasion. Specifically, Evangelista was convicted of conspiracy to impede the IRS in collection of income and payroll taxes in violation of 18 USC § 371, failure to collect or pay income/FICA taxes in violation of 26 USC § 7202 and attempt to evade or defeat tax in violation of 26 USC § 7201. After his conviction, Evangelista was sentenced to a 51 month term of imprisonment.

### II. *Proceedings Before the INS*

In 1999, Evangelista was placed in removal proceedings by the INS.[2] The government's decision to seek to remove Evangelista from this country was based upon his conviction of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(M)(ii). Evangelista sought administrative relief from deportation before the INS. In a decision dated April 11, 2000, an Immigration Judge ("IJ") denied the application. The decision of the IJ held, specifically, that Evangelista was, indeed convicted of an "aggravated felony," within the meaning of the relevant statute. Further, the IJ held that Evangelista was ineligible for a waiver of deportation pursuant to 8 USC § 1182(c) (referred to by the IJ and hereinafter as "Section 212(c)"). The rejection of the request for a waiver hearing was based on the holding that Section 212(c) was repealed and no longer available to individuals who, like Evangelista, were facing deportation and as a result of a conviction dated after the statute's repeal.

Evangelista moved for reconsideration of the decision of the IJ, which application was denied on June 2, 2000. On October 25, 2000, the initial and reconsideration decisions of the IJ were upheld by the Board of Immigration Appeals ("BIA"). The BIA agreed that Evangelista was convicted of an aggravated felony and therefore held that he was subject to removal. The BIA held further that it did not matter that the conduct for which Evangelista was punished took place prior to the effec-

---

**1.** Petitioner, like the petitioner in *Jankowski–Burczyk*, is a lawful permanent resident ("LPR") of the United States. The relevant statute, 8 U.S.C. § 1182, does not allow LPRs to seek a discretionary hardship relief from deportation while such a right is afforded to non-LPRs. The District Court held that this distinction violated the Equal Protection clause of the United States Constitution. The

Second Circuit held the distinction to be rational, and reversed the District Court.

**2.** Under current law, certain proceedings, formerly known as "deportation" proceedings are now referred to as "removal" proceedings. For purposes of this matter, the court refers to INS attempts to remove Evangelista as either removal or deportation proceedings.

tive date of the repeal of Section 212(c); Evangelista was nonetheless ineligible to apply for a waiver of deportation pursuant to the repealed statute.

In September of 2001, Evangelista was released from the custody of the Federal Bureau of Prisons, and, because of the foregoing proceedings, was placed in INS custody. Shortly thereafter, this action was commenced.

### III. *Proceedings After Transfer to INS Custody and Before This Court*

On September 13, 2001, after being placed in the custody of the INS, Petitioner commenced this proceeding seeking release. Meanwhile, upon being transferred to the custody of the INS, Petitioner was advised, by notice dated December 3, 2001, that the decision to detain him would be reviewed, after ninety days, by the INS District Director (the "District Director"). Petitioner was advised that any release that might be granted would be dependent upon his ability to demonstrate to the satisfaction of the INS that he neither posed a risk of flight nor was a danger to the community. Evangelista applied for release while this action was pending.

At argument held before this court in October of 2001, counsel informed the court that on December 12, 2001, the District Director would be reviewing Petitioner's claim for release pursuant to an order of supervision under 8 U.S.C. § 1231(a)(6). In view of the impending INS action, this court denied the request for release without prejudice to renewal after the INS determination.

In a decision issued in January 2002, the District Director denied Petitioner's request for release. In support of its decision, the INS cited Evangelista's history of involvement in criminal activities, which involvement spanned several years, as well as Evangelista's behavior during his incar-

ceration. These factors led the INS to conclude that Evangelista would present a threat to the community. Accordingly, the request for bail was denied.

In view of the INS decision to deny Petitioner's request for release, he renewed the application denied without prejudice at the October argument. In May of 2002, this court issued an opinion denying Petitioner's request for a writ of habeas corpus releasing him from custody pending a decision on the merits of his claim. It is to the merits of the initial petition that this court now turns.

### DISCUSSION

### I. *Evangelista's Remaining Arguments*

As noted above, one of Evangelista's arguments regarding his entitlement to a relief from deportation hearing has been foreclosed by the decision of the Second Circuit in *Jankowski–Burczyk*. Remaining are two arguments. First, Evangelista argues that he was not convicted of an aggravated felony within the meaning of the relevant statute. Second, Evangelista argues that, because the conduct for which he was convicted and his entry of a plea of not guilty took place prior to the repeal of Section 212(c), he remains entitled to a discretionary relief from deportation hearing. Neither claim has merit.

### A. *Evangelista Was Convicted of an "Aggravated Felony"*

Evangelista was convicted, after a jury trial, of: (1) conspiracy to impede the IRS in collection of income and payroll taxes in violation of 18 USC § 371; (2) failure to collect or pay income/FICA taxes in violation of 26 USC § 7201, and (3) attempt to evade or defeat tax in violation of 26 USC § 7202.

After serving his term of incarceration, the INS issued Evangelista a Notice to

Appear, charging him with being removable from the United States pursuant to 8 USC § 1227(a)(2)(A)(iii). This section defines the class of deportable aliens to include those who have been "convicted of an aggravated felony at any time after admission." 8 USC § 1227(a)(2)(A)(iii). An "aggravated felony" is defined in the Immigration and Nationality Act ("INA") to include offenses that are "described in section 7201 of Title 26 (relating to tax evasion) in which the revenue lost to the Government exceeds $10,000." 8 USC § 1101(a)(43)(M)(ii).

Evangelista was convicted of, among other charges, 26 USC § 7201. This statute makes it unlawful to willfully attempt, in any manner to "evade or defeat" any tax. 26 USC § 7201. The count of the indictment referring to this charge was count 26, which charged Evangelista with the willful attempt to evade and defeat income tax in an amount in excess of $300,000, by failing to pay income tax. Affirming Evangelista's conviction, the Second Circuit noted that he had been convicted of "evading personal income taxes" (in violation of 26 USC § 7601). *United States v. Evangelista*, 122 F.3d 112, 113 (2d Cir.1997).

Under these circumstances, there can be no doubt that Evangelista was convicted of an offense "described in section 7201 of Title 26 (relating to tax evasion) in which the revenue lost to the Government exceeds $10,000." 8 USC § 1101(a)(43)(M)(ii). This clearly constitutes an aggravated felony for which an alien such as Evangelista becomes deportable.

    B.   Evangelista Is Not Eligible For Relief From Deportation *Pursuant to Former Section 212(c)*

    1.   *Relevant Statutory Framework*

Prior to 1996, the Attorney General of the United States possessed broad power,

pursuant to Section 212(c), to order a relief from deportation to individuals such as Evangelista who, *inter alia* resided in this country for seven years or more. *INS v. St. Cyr*, 533 U.S. 289, 294–95, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Domond v. INS*, 244 F.3d 81, 82 (2d Cir.2001). In 1996, however, Congress passed two pieces of legislation that repealed the relief available under Section 212(c). *See* Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"); Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See St. Cyr*, 533 U.S. at 297, 121 S.Ct. 2271.

Specifically, AEDPA made certain classes of criminals, including those convicted of an aggravated felony, ineligible for relief from deportation under Section 212(c). *St. Cyr*, 533 U.S. at 297, 121 S.Ct. 2271. The IIRIRA, passed shortly thereafter, with an effective date of April 1, 1997, amended completely the INA and repealed Section 212(c) on a prospective basis. The new law replaces the Section 212(c) hearing with a "cancellation of removal" proceeding, codified at 8 USC § 1229b(a). The cancellation of removal proceeding is unavailable to aliens convicted of an aggravated felony. *Id.*

Evangelista claims that because he engaged in unlawful conduct, was indicted and entered a plea of not guilty before the effective repeal of Section 212(c), the repeal of the statute should not apply and he is therefore entitled to a hearing for discretionary relief from deportation. It is to the effect of the repeal of Section 212(c) on Evangelista's case that the court now turns.

    2.   *Evangelista Has No Right To A Section 212(c) Hearing*

Evangelista engaged in the acts alleged in the indictment and pled not guilty to the

criminal charges in this matter prior to the effective dates of AEDPA and the IIRIRA. A jury trial was held and Evangelista was convicted of the offenses described above, however, on October 29, 1996, after the effective dates of both statutes. Removal proceedings were commenced years after those effective dates.

Evangelista argues that because both his conduct and the decision to go to trial took place prior to repeal of Section 212(c), denial of a hearing in his case amounts to an unlawful retroactive application of the law. In support of his argument, Petitioner relies heavily on cases holding that an individual who pled guilty or entered a plea of *nolo contendre* prior to the repeal of Section 212(c) is nonetheless entitled to the hearing. *St. Cyr v. INS*, 229 F.3d 406, 418 (2d Cir.2000), *aff'd.*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *see also Gonzalez–Polanco v. INS*, 2002 WL 1796834 * 6 (S.D.N.Y. August 5, 2002).

The cases relied upon by Evangelista, however, focus on the expectations of individuals who choose to plead guilty instead of going to trial. Because such individuals expected, at the time of the plea, to be able to entitled to a Section 212(c) hearing, taking away that right would, according to the Second Circuit, "upset reasonable, settled expectations and change the legal effect of prior conduct." *St. Cyr*, 229 F.3d at 420–21.

When affirming the Second Circuit in *St. Cyr*, the Supreme Court similarly focused on the expected benefits of a plea bargain and the unfair result of taking away a right that was undoubtedly considered at the time of the plea. Thus, the Court held that the "potential for unfairness" in denying a Section 212(c) hearing in cases involving pre-repeal pleas of guilty is "significant and manifest." *St Cyr*, 121 S.Ct. at 2291–93. As further noted by the Court:

[p]lea agreements involve a *quid pro quo* between a criminal defendant and the government ... in exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous 'tangible benefits', such as promptly imposed punishment without the expenditure of prosecutorial resources.

*St. Cyr*, 533 U.S. at 321–22, 121 S.Ct. 2271. Preservation of the Section 212(c) hearing would be "one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead proceed to trial." *Id.* at 322, 121 S.Ct. 2271

The absence of outcome expectations in cases where a defendant chooses trial, rather than a plea, caused the Second Circuit to comment in *St. Cyr* that its holding was limited to the "narrow class of cases where an alien pled guilty to a criminal offense that qualifies as a removable crime." *St. Cyr*, 229 F.3d at 420–21. The court was quick to note that the newly amended INA would apply to all aliens whose convictions predate the IIRIRA and those who pled guilty after the repeal of Section 212(c). *St. Cyr*, 229 F.3d at 420–21.

In *Domond v. INS*, 244 F.3d 81 (2d Cir.2001), the Second Circuit made it even clearer that the holding in *St. Cyr*, was limited to those who pled guilty prior to the repeal of Section 212(c). There, the court rejected the claim that an individual whose criminal conduct took place prior to repeal of Section 212(c), but who pled guilty after the repeal, was entitled to a relief from deportation hearing. Rejecting the notion that expectations of a hearing must be protected, the Second Circuit stated that it could not "reasonably be argued that aliens committed crimes in reliance on a hearing that might possibly waive their deportation [and] 'it would border on the

absurd to argue² that [the defendant] would have decided not to commit a crime if he had known that he not only could be imprisoned, but also face deportation without the availability of a discretionary waiver of deportation." *Domond,* 244, F.3d at 86, quoting *St. Cyr,* 229 F.3d at 418.[3]

■ In sum, Supreme Court and Second Circuit precedent make clear that individuals pleading guilty prior to the repeal of Section 212(c) are nonetheless entitled to a discretionary relief from deportation hearing. Second Circuit precedent makes it equally clear that the date on which the criminal conduct is engaged is irrelevant to application of the statute. Thus, where criminal conduct took place prior to repeal of the statute but the plea of guilty is entered after its repeal, there is no right to a hearing. *Domond,* 244 F.3d at 84–86; *Soto v. Ashcroft,* 2001 WL 1029130 *4–5 (S.D.N.Y. September 7, 2001).

■ District court cases in this circuit, decided in the wake of *St. Cyr,* have limited that case to its specific holding and have refused to find any entitlement to a Section 212(c) hearing unless the defendant entered a plea of guilty prior to repeal of the statute. For example, in *Lawrence v. INS,* 2001 WL 818141 * 5–6 (S.D.N.Y. July 20, 2001), the court held that the relevant date for application of law is the date upon which the Petitioner is placed in removal proceedings by the INS. Thus, the court rejected the claim that a Section 212(c) should be held even in a case where the petitioner's conviction pre-dated the repeal of Section 212(c), but whose removal proceedings were commenced after the repeal. *Id. Accord Alfarache v. Cravener,* 203 F.3d 381, 384 (5th

Cir.2000) (repeal of Section 212(c) applies to aliens convicted of crimes prior to enactment of AEDPA but who were placed in removal proceedings after its effective date); *United States v. Herrera–Blanco,* 232 F.3d 715, 719 (9th Cir.2000) (same).

This court need not go so far in this matter. It is sufficient, for purposes of this opinion, to hold that Evangelista is not entitled to a Section 212(c) hearing for discretionary relief from deportation because his conduct took place prior to repeal of the statute and he was convicted after its repeal.

Evangelista seeks to place himself in the same position as the petitioner in *St. Cyr,* on the ground that he made the decision to plead not guilty and go to trial prior to repeal of the statute, but was thereafter convicted. The court declines to adopt Evangelista's position. Where, as here, a defendant elects to go to trial, rather than accept a plea bargain, the fairness considerations expressed by the Second Circuit and the Supreme Court in *St. Cyr,* are simply not present. In such cases, there can be no expectation of a particular outcome. The defendant has decided to go to trial and assume the consequences of whatever verdict a jury returns. He puts his fate, including his immigration status, in the hands of the jury and not those of the prosecution. Because Evangelista chose to go to trial, the reasonable expectations with which the courts in *St. Cyr,* were concerned are not present. Accordingly, he can claim no right to a Section 212(c) hearing.

A recent decision by the Second Circuit gives this court confidence in so holding. In *Mohammed v. Reno,* 309 F.3d 95 (2d

---

**3.** Prior to *St. Cyr,* the Second Circuit held that Section 212(c) hearings remain available to those aliens who were placed in removal proceedings prior to the effective dates of AEDPA and IIRIRA. *See Henderson v. INS,* 157 F.3d

106 (2d Cir.1998) Since Evangelista was not placed in removal proceedings until years after the enactment of the statutes repealing Section 212(c), *Henderson* has no relevance here.

Cir.2002), the court decided whether the petitioner was entitled to a stay of removal proceedings pending his appeal of a district court decision denying a motion for habeas corpus. The petitioner in *Mohammed*, like Evangelista, sought a discretionary relief from deportation hearing. Like Evangelista, Mohammed committed his crime prior to repeal of Section 212(c), but was convicted after the repeal. The district court denied Mohammed's petition, but ordered a stay of deportation pending appeal to the Second Circuit.

When deciding whether the stay was appropriate, the Second Circuit held that petitioner would be entitled to a stay only if he had a substantial possibility of success on the merits of his appeal. Holding that the stay should not have been imposed, the Second Circuit commented that the Supreme Court's affirmance of *St. Cyr* gave Mohammed "no basis for thinking that [he] had a substantial possibility of a successful appeal." *Mohammed*, 309 F.3d at 102. The fact that Mohammed was convicted after repeal of Section 212(c) was held to divest him of any reliance on the possibility of a hearing. *Id.* Likewise, Evangelista can claim no such reliance.[4]

■ In view of the foregoing, the court holds that where, as here, a criminal defendant elects to go to trial in connection with conduct or a conviction that pre-dates the repeal of Section 212(c), but is convicted and placed in removal proceedings after the repeal of the statute, there is no right to take advantage of the pre-repeal hearing.

II. *A Remand to the BIA is Not Necessary*

As a final matter, the court addresses Evangelista's request that this matter be

remanded to the BIA. Evangelista argues that remand is necessary and prudent because neither the IJ nor the BIA ever discussed the retroactivity issue and pursuant to "well-established principals of administrative law," the issue should be decided at the administrative level in the first instance.

In support of this argument, Evangelista relies on *Gelman v. Ashcroft*, 298 F.3d 150 (2d Cir.2002). While it is true that *Gelman* required a remand to the BIA for consideration of a matter of first impression, that case is readily distinguishable. In *Gelman*, the Second Circuit ordered a remand to the BIA to consider the impact of the Supreme Court's decision in *St. Cyr* on the particular legal issue raised in that case. The *Gelman* issue was one of retroactivity that was not decided by *St. Cyr.* The Second Circuit held it appropriate to refrain from deciding the issue "so as to avoid any premature interference with the agency's processes," to give the parties and courts the benefit of the agency's expertise, and to create an adequate record for judicial review. *Gelman*, 298 F.3d at 152, quoting, *Arango–Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir.1994).

■ Unlike the issue raised in *Gelman*, the policies underlying the retroactivity raised issue here have been discussed by both the Second Circuit and the Supreme Court in *St. Cyr.* No novel issue of law is presented and there is therefore no benefit to remanding the case to have, as argued by Evangelista, the administrative agency decide the issue in the first instance. Moreover, there are no factual issues that need to be developed at the administrative level so as to "create an adequate record for judicial review." *Gelman*, 298 F.3d at

---

**4.** The court notes that Evangelista has not yet been removed from the country. This "stay" of removal has been agreed upon between the parties here and is not pursuant to an order of the court.

152. On the contrary, the legal issue and policy matters here have been discussed extensively by courts whose precedent bind this court in the same way that those precedents would bind the BIA. Because no purpose would be served by remanding a matter that requires no factual development and has been extensively explored, remand is required by neither common sense, administrative law, or by *Gelman.* Accordingly, the court rejects the notion that *Gelman* requires a remand.

### CONCLUSION

For the foregoing reasons, the request for issuance of a writ of habeas corpus is denied. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.