359 F.3d 145
 Louis EVANGELISTA, Petitioner-Appellant,
v.
John ASHCROFT, Attorney General of the United States; James Ziglar, Commissioner of the Immigration & Naturalization Service; United States Immigration and Naturalization Service, Respondents-Appellees.
 No. 03-2019.
 United States Court of Appeals, Second Circuit.
 Argued: December 3, 2003.
 Decided: February 23, 2004.
 
 COPYRIGHT MATERIAL OMITTED Matthew L. Guadagno, Bretz & Coven, LLP (Kerry William Bretz and Jules E. Coven, of counsel), New York, NY, for Petitioner-Appellant.
 Dione M. Enea, Special Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney, and Varuni Nelson, Assistant United States Attorney, of counsel), Brooklyn, NY, for Respondents-Appellees.
 Before: CARDAMONE, SACK, and GIBSON,* Circuit Judges.
 SACK, Circuit Judge.
 
 
 1
 The petitioner-appellant, Louis Evangelista, appeals from a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge) dismissing his petition for a writ of habeas corpus to prevent his deportation[1] to Italy. The district court held that Evangelista had been convicted of an offense "described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000," 8 U.S.C. § 1101(a)(43)(M)(ii), for which he was deportable under the Immigration and Nationality Act (the "INA"). We agree with the district court's conclusion, although on grounds that differ somewhat from those on which the district court relied.
 
 
 2
 The district court also held that Evangelista was not eligible for a waiver of deportation because he was convicted of the offense at issue after Congress had abolished such relief for persons convicted of an aggravated felony. The unavailability of a waiver is not impermissibly retroactive in this case, the district court reasoned, because irrespective of the timing of the underlying criminal conduct, Evangelista's conviction of the relevant crime occurred when the waiver was no longer available.
 
 BACKGROUND
 
 3
 The petitioner-appellant, Louis Evangelista, is a sixty-three-year-old native and citizen of Italy. He has been a lawful permanent resident of the United States since 1961. In 1995, a superseding indictment was filed in the United States District Court for the Eastern District of New York charging Evangelista with various federal tax crimes involving events that occurred as early as 1988. In count 26 of the superseding indictment, Evangelista was charged with "willfully attempt[ing] to evade and defeat [an] income tax by failing to pay said income tax to the Internal Revenue Service and by concealing and attempting to conceal from all proper officers of the United States of America his true assets" in violation of 26 U.S.C. § 7201. Superseding Indictment at 16, United States v. Evangelista, No. 94-CR-1277(S-2) (LDW) (E.D.N.Y.1996) (emphasis added).
 
 
 4
 Evangelista pleaded not guilty to all of the counts against him. However, a jury found him guilty on all counts. The district court's judgment of conviction, dated October 29, 1996, states that Evangelista was adjudged guilty under count 26 of "[a]ttempt[ing] to evade or defeat tax" in violation of 26 U.S.C. § 7201. Judgment of Conviction, United States v. Evangelista, No. CR 94-1277(S-2) (E.D.N.Y. Oct. 29, 1996) (emphasis added). Evangelista appealed his conviction to this Court. We affirmed. See United States v. Evangelista, 122 F.3d 112, 114 (2d Cir.1997), cert. denied, 522 U.S. 1114, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). Our opinion focused primarily on counts under 26 U.S.C. § 7202, not on the section 7201 counts. Id. at 116-22. But we did note in passing that Evangelista "was convicted of evading personal income taxes (in violation of 26 U.S.C. § 7201)," id. at 113 (emphasis added), and that "[t]he jury found [Evanglista and another defendant] guilty on all of the counts with which they were charged," id. at 116.
 
 
 5
 As a result of Evangelista's conviction, on April 14, 1998, the Immigration and Naturalization Service ("INS") issued to Evangelista a Notice To Appear, stating that he was subject to removal from the United States for having been convicted of an "aggravated felony" as defined in the INA, 8 U.S.C. § 1101(a)(43)(M)(ii). Section 1101(a)(43) contains a lengthy list of those crimes constituting an "aggravated felony" for the purpose of determining who is deportable under the INA. The list includes as an aggravated felony in section 1101(a)(43)(M)(ii) — the section relevant to the Notice To Appear — "an offense that ... is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." Id.
 
 
 6
 In removal proceedings before an Immigration Judge ("IJ"), Evangelista challenged his potential deportation. He first contended that he had not been convicted of an aggravated felony because there was no clear and convincing evidence that he had been convicted under count 26 of evading taxes, rather than defeating taxes, and that only evading taxes constitutes an aggravated felony under the INA. Evangelista also argued that he was eligible for a waiver of deportation pursuant to former section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, Div. C, § 304(b), 110 Stat. 3009-546, 3009-597), because at the time of his criminal conduct he was eligible for the waiver. The IJ, rejecting Evangelista's arguments, ordered his removal.
 
 
 7
 Evangelista appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA held that Evangelista had been convicted of an aggravated felony within the meaning of the INA. First, the BIA concluded that Evangelista had been convicted of tax evasion, an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(ii). The BIA relied on (1) the judgment of conviction, which stated that Evangelista was found guilty on count 26 for attempting to evade or defeat taxes in violation of 26 U.S.C. § 7201, (2) the indictment, which set out count 26 as a charge of both evading taxes and defeating taxes, and (3) our decision on Evangelista's appeal, which referred to Evangelista as having been convicted of tax evasion. Second, the BIA reasoned that even if Evangelista had been convicted under section 7201 only of defeating taxes and not of evading them, he would nonetheless have committed an aggravated felony under the INA, because the parenthetical phrase in the relevant section — "(relating to tax evasion)" — is merely descriptive of the substance of section 7201. According to the BIA, the parenthetical phrase does not limit the definition of an aggravated felony under section 1101(a)(43)(M)(ii) to those offenses that involve tax evasion, but also includes those that involve defeating taxes. And third, the BIA concluded that even if the "relating to tax evasion" parenthetical phrase restricted the scope of section 1101(a)(43)(M)(ii) to convictions relating to tax evasion under 26 U.S.C. § 7201, defeating taxes was "relat[ed] to tax evasion" and therefore qualified as an aggravated felony. The BIA then held that Evangelista was not eligible for a waiver of deportation under former section 212(c) because he was convicted and formal deportation proceedings against him were begun only after the section was repealed. The BIA therefore dismissed Evangelista's appeal. See In re Evangelista, No. Abl-kdu-flh (B.I.A. Oct. 25, 2000).
 
 
 8
 Evangelista then filed in the district court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking relief from deportation. The court denied his petition. See Evangelista v. Ashcroft, 232 F.Supp.2d 30 (E.D.N.Y.2002). Relying on the conjunctive language in count 26 of the indictment ("willfully attempt[ing] to evade and defeat [an] income tax" (emphasis added)) and our opinion on Evangelista's appeal, the court concluded that "there can be no doubt that Evangelista was convicted of an offense `described in section 7201 of Title 26 (relating to tax evasion) in which the revenue lost to the Government exceeds $10,000.'" Id. at 34 (quoting 8 U.S.C. § 1101(a)(43)(M)(ii)). The court therefore decided that Evangelista had been convicted of an aggravated felony and was deportable. Id. The district court also concluded that relief from deportation under former INA section 212(c) was not available to Evangelista, "a criminal defendant [who] elect[ed] to go to trial in connection with conduct or a conviction that pre-dates the repeal of Section 212(c), but [who was] convicted and placed in removal proceedings after the repeal of the statute." Id. at 37. According to the district court, it is the date of conviction, not the date of the criminal conduct or of entry of a plea of not guilty, that controls. The court reasoned that there are no fairness concerns when the defendant elects to proceed to trial — as opposed to enters into a plea agreement — before the repeal of section 212(c). Id. at 36.
 
 
 9
 Evangelista appeals.
 
 DISCUSSION
 I. Conviction of an Aggravated Felony
 
 10
 "Any alien who is convicted of an aggravated felony at any time after admission [to the United States] is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The INS "has the burden of establishing [deportability] by clear and convincing evidence," which must be "reasonable, substantial, and probative." Id. § 1229a(c)(3)(A).
 
 
 11
 We have no jurisdiction to review a final order of removal against an alien who is removable for having committed an aggravated felony. Id. § 1252(a)(2)(C). But "[w]e do retain jurisdiction ... to review the question whether, as a matter of law, [a petitioner] committed an `aggravated felony' under [the INA]." Dalton v. Ashcroft, 257 F.3d 200, 203 (2d Cir.2001). We therefore have jurisdiction to review whether Evangelista was convicted of an aggravated felony under the INA.
 
 
 12
 The INA sets forth a list of offenses that qualify as types of aggravated felonies. Among them is "an offense that ... is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(ii). 26 U.S.C. § 7201 in turn criminalizes "willful[ ] attempts in any manner to evade or defeat any tax imposed by [Title 26] or the payment thereof." We therefore must decide whether Evangelista's conviction under 26 U.S.C. § 7201 falls within the scope of section 1101(a)(43)(M)(ii), thus rendering him deportable.
 
 
 A. Standard of Review
 
 
 13
 "On appeal from the denial of a habeas petition brought pursuant to 28 U.S.C. § 2241, we review the merits of the petition de novo." Chrzanoski v. Ashcroft, 327 F.3d 188, 191 (2d Cir.2003). We review the BIA's interpretation of ambiguous provisions of the INA, however, with substantial deference to the BIA, Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir.2003), rejecting its interpretation only if it is "arbitrary, capricious, or manifestly contrary to the statute," Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. 2778. We review de novo the BIA's interpretation of federal criminal statutes, such as 26 U.S.C. § 7201, because we and not they are charged with the responsibility of such interpretation. See Dickson, 346 F.3d at 48; see also Ming Lam Sui v. INS, 250 F.3d 105, 116 (2d Cir.2001) (reviewing de novo whether a petitioner's conviction fits within the BIA's reasonable interpretation of a subsection of the definition of "aggravated felony").
 
 
 B. Scope of Section 1101(a)(43)(M)(ii)
 
 
 14
 1. The Arguments. Evangelista argues that the language of 8 U.S.C. § 1101(a)(43)(M)(ii) — an offense "described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000" — together with the rule of lenity, require us to interpret that section to render deportable only persons convicted for tax evasion under 26 U.S.C. § 7201, and not those convicted of "defeat[ing] a[ ] tax" under that section. He contends further that the crime of "defeat[ing] a[ ] tax" is not a section 7201 crime "relat[ed] to tax evasion," under the language of the parenthetical phrase, because "`[e]vasion' appears to involve concealment of assets, whereas `defeating' appears to involve improper tax avoidance, unlawfully minimizing one's tax liability, or other refusal to pay tax." Petitioner's Br. at 16. Evangelista urges us to conclude that because only tax evasion and section 7201 crimes related to tax evasion are aggravated felonies under the INA and because the INS did not meet its burden of proof to establish that Evangelista was convicted of tax evasion or a section 7201 crime "relating to tax evasion," he is not deportable for commission of an aggravated felony under the INA.
 
 
 15
 The government responds that the language of section 1101(a)(43)(M)(ii) provides that any conviction under 26 U.S.C. § 7201 is an aggravated felony, as long as the revenue loss to the government exceeds $10,000, because the parenthetical phrase "relating to tax evasion" is merely descriptive of the offenses set out in 26 U.S.C. § 7201. And, the government continues, even if section 1101(a)(43)(M)(ii) is restricted to convictions under 26 U.S.C. § 7201 for offenses described in the parenthetical phrase — "relating to tax evasion" — a conviction for "defeat [of a] tax" is a conviction under 26 U.S.C. § 7201 that "relat[es] to tax evasion" because there is no legal distinction between tax evasion and "defeat [of a] tax." The government asks us to conclude that Evangelista is removable whether convicted under section 7201 of tax evasion, defeating taxes, or both.
 
 
 16
 2. Analysis. There are, it seems to us, at most four offenses described in 26 U.S.C. § 7201:(1) "evad[ing] ... a[] tax"; (2) "defeat[ing] a[] tax"; (3) "evad[ing] ... the payment thereof;" and (4) "defeat[ing]... the payment thereof." Cf. Sansone v. United States, 380 U.S. 343, 354, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965) ("As this Court has recognized, § 7201 includes the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax." (emphasis omitted)). Although Evangelista attempts to distinguish between "defeat[ing]" a tax and "evad[ing]" a tax, courts and commentators use the two terms interchangeably. See, e.g., id. at 351, 85 S.Ct. 1004 ("As has been held by this Court, the elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." (citations omitted)); United States v. Schwartz, 325 F.2d 355, 356 (3d Cir.1963) (noting first that the defendant was indicted for tax evasion and then that the substance of the charge is that he willfully attempted to defeat the payment of taxes); Ian M. Comisky, Lawrence S. Feld & Steven M. Harris, Tax Fraud & Evasion ¶ 7.01[2][a] (2004) ("[Section] 7201 defines two distinct crimes: (1) the willful attempt to evade or defeat any tax and (2) the willful attempt to evade or defeat the payment of any tax."). We conclude from this that whatever differences there may be between them, "defeat [of a] tax" is at least "relat[ed] to tax evasion," rendering a conviction for it an "aggravated felony" within section 1101(a)(43)(M)(ii). Whether Evangelista was convicted under 26 U.S.C. § 7201 of evading taxes, defeating taxes, or both, according to the accepted usage of the terms, he was convicted of an aggravated felony under section 1101(a)(43)(M)(ii). We therefore agree with the BIA's reading of section 1101(a)(43)(M)(ii).
 
 
 17
 This reading of "relating to tax evasion" obtains whether the parenthetical phrase in section 1101(a)(43)(M)(ii) has a restrictive meaning, as Evangelista argues, or a descriptive meaning, as the government argues and as the BIA determined. And inasmuch as we see no ambiguity in the scope of section 1101(a)(43)(M)(ii) as applied to Evangelista, the rule of lenity has no place in our analysis. See INS v. Cardoza-Fonseca, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (noting "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948) ("We resolve ... doubts in favor of [a] construction [of a deportation statute in favor of a habeas corpus petitioner] because deportation is a drastic measure and at times the equivalent of banishment or exile.... [S]ince the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used." (emphasis added)).
 
 
 18
 In United States v. Monjaras-Castaneda, 190 F.3d 326 (5th Cir.1999), cert. denied, 528 U.S. 1194, 120 S.Ct. 1254, 146 L.Ed.2d 111 (2000), the Fifth Circuit took a somewhat different approach in reaching a similar conclusion in a similar case. 8 U.S.C. § 1101(a)(43)(N) declares "an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling)" to be an aggravated felony. In interpreting the parenthetical phrase as descriptive rather than restrictive, the Fifth Circuit relied on grammatical rules and the structure and context of section 1101(a)(43) as a whole to determine that the parenthetical phrase modifies "paragraph (1)(A) or (2) of section 1324(a) of this title" rather than "an offense." Id. at 329-30 (upholding an enhanced sentence that the defendant received for having committed an "aggravated felony," as defined by section 1101(a)(43)(N), for his conviction under 8 U.S.C. § 1324(a)(1)(A) of transporting aliens, which is arguably different from smuggling aliens); accord Patel v. Ashcroft, 294 F.3d 465, 472-73 (3d Cir.2002) (holding, in reliance on Monjaras-Castaneda and other cases, that a habeas petitioner's conviction for harboring an alien under 8 U.S.C. § 1324 is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(N), rendering the petitioner deportable); United States v. Galindo-Gallegos, 244 F.3d 728, 733-34 (9th Cir.2001) (holding that a defendant's conviction for transporting aliens is an aggravated felony and that the defendant therefore deserved an enhanced sentence); United States v. Salas-Mendoza, 237 F.3d 1246, 1247-48 (10th Cir.2001) (same).
 
 
 19
 The Monjaras-Castaneda court reasoned that traditional rules of grammar indicate that the parenthetical phrase in section 1101(a)(43)(N) modifies "paragraph (1)(A) or (2) of section 1324(a) of this title" because of its placement following those words instead of directly after the words "an offense." Monjaras-Castaneda, 190 F.3d at 329. It then noted that section 1101(a)(43) contains a long list of aggravated felonies that it references by statutory section. The court concluded that parenthetical phrases found throughout the statute were included to assist readers in identifying the crimes referred to by the statute, without having to endure the "long and arduous process" of "look[ing] up each section number in the Code." Id. at 330. The court then observed that other parenthetical phrases in that section are expressly restrictive. See id. (quoting 8 U.S.C. § 1101(a)(43)(F) (listing as an aggravated felony "a crime of violence (as defined in § 16 of Title 18, but not including a purely political offense) for which a term of imprisonment is at least one year") and 8 U.S.C. § 1101(a)(43)(J) (enumerating "an offense described... in section 1084 (if it is a second or subsequent offense)" as an aggravated felony)). The Fifth Circuit was of the view that had Congress intended the parenthetical phrase in section 1101(a)(43)(N) to be restrictive, it would have said so, as it had in the other subsections. Id.
 
 
 20
 We are not entirely comfortable with applying the Fifth Circuit's approach to the case before us. Section 1101(a)(43)(L) deems to be an aggravated felony an offense described in:
 
 
 21
 ...
 
 
 22
 (ii) section 421 of Title 50 (relating to protecting the identity of undercover intelligence agents); or (iii) section 421 of Title 50 (relating to protecting the identity of undercover agents).
 
 
 23
 8 U.S.C. § 1101(a)(43)(L). The legislative history indicates that the addition of section 1101(a)(43)(L)(iii) to what already included section 1101(a)(43)(L)(ii) served the purpose of "add[ing a] new offense[] to the definition relating to ... revealing the identity of undercover agents." IIRIRA, H.R. Conf. Rep. No. 104-828, at 223 (1996). Plainly, the parenthetical phrases in subsections (L)(ii) and (L)(iii) distinguish between different parts of section 421 of Title 50 — one relating to "undercover intelligence agents" and one relating to "undercover agents"; they therefore do not simply describe 50 U.S.C. § 421. Evangelista argues in his reply brief that the inclusion of both sections 1101(a)(43)(L)(ii) and (iii) as distinct types of an aggravated felony where the parenthetical phrases cannot be read as descriptive indicates that the similar parenthetical phrase in section 1101(a)(43)(M)(ii) is not descriptive either. Evangelista's objection is sufficiently compelling for us to refrain from adopting the reasoning of Monjaras-Castaneda for section 1101(a)(43)(N) as our analysis of the language of section 1101(a)(43)(M)(ii).
 
 
 24
 We conclude that irrespective of whether Evangelista was convicted of tax evasion under 26 U.S.C. § 7201, he was convicted of an offense "relating to tax evasion" under 26 U.S.C. § 7201. Evangelista is thus deportable.[2]
 
 II. Section 212(c) Waiver of Deportation
 
 25
 Because we conclude that Evangelista is deportable, we must consider his argument that he is eligible for a waiver of deportation pursuant to former section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994). He argues that the application of the INA would be impermissibly retroactive if it disqualified him from consideration for such a waiver under a repealed section of the INA, because that section was in effect when he violated 26 U.S.C. § 7201. He asserts that he relied on the waiver's availability, even though it had been repealed at the time he was convicted of the crime and when formal deportation charges were brought against him. The government responds that we are bound by our case law establishing that it is not impermissibly retroactive to deny discretionary relief to petitioners such as Evangelista, who, after the repeal, were convicted of an aggravated felony after a jury trial and against whom deportation proceedings were commenced. We agree with the government.
 
 
 A. Repeal of Section 212(c)
 
 
 26
 A recent opinion by this Court succinctly sets forth the background of former INA section 212(c), which provided for discretionary relief from deportation:
 
 
 27
 [T]he deportation of resident aliens who commit aggravated felonies is controlled by the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1227(a)(2)(A)(iii) (2001). Prior to 1997, aliens deportable under the INA could apply to the Attorney General for a discretionary waiver of deportation pursuant to § 212(c) of the INA. To qualify for such relief, an alien was required to show that he (1) was a lawful permanent resident of the United States, (2) had an unrelinquished domicile of seven consecutive years, and (3) had not committed an aggravated felony for which he had served a term of at least five years. See 8 U.S.C. § 1182(c) (1994). If the alien met these requirements, the Attorney General had the discretion to waive deportation.
 
 
 28
 Rankine v. Reno, 319 F.3d 93, 95 (2d Cir.), cert. denied sub nom. Lawrence v. Ashcroft, ___ U.S. ___, 124 S.Ct. 287, 157 L.Ed.2d 199 (2003). But in 1996,
 
 
 29
 Congress enacted first the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which limited eligibility for relief under § 212(c), see AEDPA, Pub.L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (1996), and then the Illegal Immigration Reform and Immigrant Responsibility Act ... which repealed INA § 212(c) completely, effective April 1, 1997. See IIRIRA, Pub.L. No. 104-208, § 304(b), 110 Stat. 3009-546, -597 (1996). Section 212(c) relief was, in effect, replaced by a new form of relief called "cancellation of removal," 8 U.S.C. § 1229b, which allows the Attorney General to cancel removal proceedings for a class of resident aliens that does not include those convicted of an aggravated felony. In removal proceedings commenced after April 1, 1997, therefore, resident aliens convicted of an aggravated felony are no longer eligible for any form of discretionary relief from deportation.
 
 
 30
 Id. at 95-96.
 
 
 B. Standard of Review
 
 
 31
 Whether the repealed section 212(c) may be applied to an alien convicted of an aggravated felony based on criminal acts that took place before the repeal is a question of law that we review de novo. Domond v. U.S. INS, 244 F.3d 81, 84 (2d Cir.2001).
 
 
 C. Retroactivity
 
 
 32
 We held in Domond that the repeal of section 212(c) "imposes no new legal consequences on aliens ... whose criminal conduct pre-dates AEDPA, but whose convictions came after AEDPA's enactment. It is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief." Id. at 85-86 (internal quotation marks omitted). We said that "it cannot reasonably be argued that aliens committed crimes in reliance on a hearing that might possibly waive their deportation." Id. at 86.
 
 
 33
 The Supreme Court subsequently addressed a related question in INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). It held that section 212(c) relief, though repealed, "remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." Id. at 326, 121 S.Ct. 2271. The Court reasoned that "[g]iven the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." Id. at 323, 121 S.Ct. 2271 (footnote omitted). The Court observed that it could "consider an alien's reasonable reliance on the continued availability of discretionary relief from deportation when deciding whether the elimination of such relief has a retroactive effect." Id. at 324, 121 S.Ct. 2271.
 
 
 34
 Subsequently, two judges of the United States District Court for the Eastern District of New York each urged us to reconsider our holding in Domond in light of St. Cyr. See Mohammed v. Reno, 205 F.Supp.2d 39, 39 (E.D.N.Y.) (Gleeson, J.) (following Domond, but stating that "Domond is at odds with controlling case law of the Supreme Court"), stay pending appeal vacated, 309 F.3d 95 (2d Cir.2002); Beharry v. Reno, 183 F.Supp.2d 584, 591 (E.D.N.Y.2002) (Weinstein, J.) ("Domond... should be reconsidered as the courts interpret and develop the Supreme Court's more recent immigration rulings and the requirements of international law."), rev'd sub nom. Beharry v. Ashcroft, 329 F.3d 51 (2d Cir.2003).
 
 
 35
 We have reconsidered Domond's viability in light of St. Cyr in several cases, and in each concluded that Domond remains good law despite St. Cyr. See, e.g., Khan v. Ashcroft, 352 F.3d 521, 525 (2d Cir.2003); Beharry v. Ashcroft, 329 F.3d 51, 63 (2d Cir.2003); Mohammed v. Reno, 309 F.3d 95, 103 (2d Cir.2002); accord Swaby v. Ashcroft, 357 F.3d 156, 161-62, 2004 WL 193576, at *4 (2d Cir. Feb.3, 2004), 2004 U.S.App. LEXIS 1569, at *15-*17; Rankine, 319 F.3d at 102; Dias v. INS, 311 F.3d 456, 458 (1st Cir.2002) (per curiam), cert. denied, ___ U.S. ___, 123 S.Ct. 2574, 156 L.Ed.2d 603 (2003); Chambers v. Reno, 307 F.3d 284, 286 (4th Cir.2002); Armendariz-Montoya v. Sonchik, 291 F.3d 1116, 1121-22 (9th Cir.2002), cert. denied, ___ U.S. ___, 123 S.Ct. 2247, 156 L.Ed.2d 110 (2003).
 
 
 36
 Rankine is directly on point. We held there that "the repeal of § 212(c) relief does not have an impermissibly retroactive effect when applied to" an alien against whom the INS commenced formal removal proceedings after the passage of AEDPA and IIRIRA, but who was convicted of an aggravated felony for criminal conduct that occurred before the passage. Rankine, 319 F.3d at 102. We reasoned that St. Cyr did not directly govern Rankine's outcome because the former case involved a petitioner who pleaded guilty before the repeal of section 212(c), while the latter involved petitioners who pleaded not guilty, proceeded to trial, and were convicted before the repeal of section 212(c). Id. at 99.[3] This difference was material in two ways:
 
 
 37
 First, none of these petitioners [who proceeded to trial] detrimentally changed his position in reliance on continued eligibility for § 212(c) relief. Unlike aliens who entered pleas, the petitioners made no decision to abandon any rights and admit guilt — thereby immediately rendering themselves deportable — in reliance on the availability of the relief offered prior to IIRIRA. The petitioners decided instead to go to trial, a decision that, standing alone, had no impact on their immigration status. Unless and until they were convicted of their underlying crimes, the petitioners could not be deported....
 
 
 38
 Second, the petitioners have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial.
 
 
 39
 Id. at 99-100. Because Rankine and its reasoning squarely govern Evangelista's challenge, we conclude that denial of section 212(c) relief to Evangelista is not impermissibly retroactive.[4] Evangelista therefore does not qualify to apply for a waiver of deportation.
 
 CONCLUSION
 
 40
 For the foregoing reasons, we conclude that the district court properly dismissed Evangelista's petition for a writ of habeas corpus. The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, Div. C, 110 Stat. 3009-546, "realigned the vocabulary of immigration law, creating a new category of `removal' proceedings that largely replaces what were formerly exclusion proceedings and deportation proceedings." Gerald L. Neuman,Habeas Corpus, Executive Detention, and the Removal of Aliens, 98 Colum. L.Rev. 961, 966 (1998); see also Mohammed v. Reno, 309 F.3d 95, 96 (2d Cir.2002) (referring to the change in nomenclature). We nonetheless use the terms "deport," "deportation," and "deportable" from time to time in this opinion as well-worn colloquialisms for "remove," "removal," and "removable," respectively.
 
 
 [2]
 Evangelista does not contest the BIA's finding that his crime caused revenue loss to the government exceeding $10,000, as required by 8 U.S.C. § 1101(a)(43)(M)(ii)
 
 
 [3]
 The only difference betweenRankine and the instant case is that in Rankine, the petitioners were convicted before the passage of AEDPA or IIRIRA, see Rankine, 319 F.3d at 96, while Evangelista was convicted after the passage of AEDPA and IIRIRA. If anything, that means that the petitioners in Rankine had a stronger case than Evangelista has, so the holding of Rankine must apply to him.
 
 
 [4]
 In his reply brief, Evangelista urges for the first time that he could show detrimental reliance on repealed section 212(c) because he could have, but did not, file an administrative motion for a discretionary waiver of deportation before the repeal of the waiver for aggravated felons. At oral argument, the government replied that this argument is not properly before us because it was made for the first time in Evangelista's reply brief. The government continued that on the merits, Evangelista had no reliance interest because he did not file such a motion and, moreover, because he could not file such a motion until he became eligible for deportation upon his conviction, which postdated the repeal of waiver for aggravated felons. We do not consider the merits of Evangelista's argument, because "[w]e will not consider an argument raised for the first time in a reply brief."See United States v. Yousef, 327 F.3d 56, 115 (2d Cir.2003).